THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EDWARD M. INGRAM, Defendant-Appellant.

Second District    No. 2—07—0280

Opinion filed April 21, 2009.

Patricia Unsinn and Linda M. Olthoff, both of State Appellate Defender's Office, of Chicago, for appellant.

Philip J. Nicolosi, State's Attorney, of Rockford (Lawrence M. Bauer and Sally A. Swiss, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE JORGENSEN delivered the opinion of the court:

Following a jury trial, defendant, Edward M. Ingram, was convicted of the unlawful possession of a weapon by a felon (720 ILCS

5/24—1.1(a) (West 2006)). Defendant appeals, arguing that (1) the evidence was insufficient to prove beyond a reasonable doubt that he knew a weapon was in the car in which he was a passenger, and (2) the trial court erroneously admitted testimony that the area of defendant's arrest was known as a high-crime area. We affirm.

On September 28, 2006, Officers Lambrecht and Stien were in an unmarked squad car, patrolling an area of Rockford that Lambrecht described as a "high crime area." Specifically, the officers were patrolling the parking lot of the South Main Food & Liquor store. Stien described the business as follows:

> "The parking lot and the business establishment, we have had many arrests that we have made in there for drug trafficking, the sale of illegal narcotics, possessions of firearms. We have had homicides in the parking lot. We have had homicides within the store. The store actually for a short period of time was shut down due to the amount of crime that was in the parking lot and going through the business."

Defense counsel objected to this testimony, which objection the trial court overruled.

In the store's parking lot, the officers noticed a maroon Chevy Blazer that quickly pulled out of a parking stall, turned abruptly, and then parked at the other end of the parking lot. The officers drove past the car, ran the car's license plate, and discovered that its registration had expired. The car was registered to Adrian Anderson. Dominique Wilson was driving the car, and defendant and Clarissa Ingram were passengers. The car exited the parking lot, failing to use a turn signal. Because of the expired registration, the officers stopped the car, activating their emergency lights. Defendant, who was seated in the front passenger seat, immediately exited the car and started to walk away. Defendant ignored Stien's command to stop. Defendant walked approximately 20 feet away, until Stien finally caught up to him and grabbed his arm. Defendant appeared intoxicated or under the influence of drugs. When asked for his name, defendant initially gave a false name. Defendant then correctly identified himself.

While Stien was detaining defendant, Lambrecht approached Wilson, who had just exited the vehicle and was standing beside the car. The driver's door was open, and Stien observed a bullet cartridge and a bottle of liquor on the driver's front floor board. Stien also saw a black handgun in plain view on the floor directly behind the driver's seat. Clarissa was sitting in the backseat. The front passenger seat where defendant had been sitting was broken, such that the seat was fully reclined and lying on the backseat. The gun was easily accessible from the reclined position of the front passenger seat.

A crime scene analyst testified that no useful fingerprints were recovered from the gun. The parties stipulated that defendant had previously been convicted of a felony.

The jury found defendant guilty. In his motion for a new trial, defense counsel renewed his objection to the police officers' testimony regarding the crime associated with the area of defendant's arrest. The trial court denied the motion, noting that there needed to be some explanation as to why the officers were patrolling that area in an unmarked car and that the jurors were entitled to know how the events unfolded that evening. The trial court sentenced defendant to five years' imprisonment. Defendant timely appeals.

Defendant first argues that the State failed to prove him guilty beyond a reasonable doubt. Specifically, he argues that the State did not prove that he had knowledge of the gun that was found on the floor behind the driver's seat. In considering a challenge to the sufficiency of the evidence, we ask only whether, after viewing all of the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense proved beyond a reasonable doubt. *People v. Lamon*, 346 Ill. App. 3d 1082, 1089 (2004). The trier of fact is responsible for determining the witnesses' credibility, weighing their testimony, and deciding on the reasonable inferences to be drawn from the evidence. *Lamon*, 346 Ill. App. 3d at 1089.

We reject defendant's argument that we should apply the *de novo* standard of review. As the State notes, knowledge and possession were questions of fact to be resolved by the jury, and here those facts were in dispute. See *People v. Hester*, 271 Ill. App. 3d 954, 961 (1995). Thus, we will not disturb the jury's findings unless the evidence is so unbelievable, improbable, or unsatisfactory that it creates a reasonable doubt of guilt. *Hester*, 271 Ill. App. 3d at 961.

To sustain a conviction of unlawful possession of a weapon by a felon, the State needed to prove that (1) defendant knowingly possessed a firearm, and (2) defendant had been convicted of a felony. 720 ILCS 5/24—1.1(a) (West 2006); *Hester*, 271 Ill. App. 3d at 956. (Although the statute also prohibits the knowing possession of firearm ammunition, and here there was firearm ammunition found in the car, the jury was instructed only as to unlawful possession of a firearm.) The parties stipulated to defendant's prior felony conviction, so all that remained at issue was whether defendant knowingly possessed a firearm.

■ Criminal possession may be actual or constructive; and where, as here, the possession was allegedly constructive, the State had to prove that defendant (1) had knowledge of the presence of the weapon, and (2) had immediate and exclusive control over the area where the

weapon was found. *People v. Hampton*, 358 Ill. App. 3d 1029, 1031 (2005); *People v. Stack*, 244 Ill. App. 3d 393, 398 (1993). "The element of knowledge may, and most often must, be proved by circumstantial evidence." *People v. Rangel*, 163 Ill. App. 3d 730, 739 (1987). Because the State could not rely on an inference of knowledge stemming merely from defendant's presence in the car, the State had to present other evidence establishing knowledge of the weapon. See *Hampton*, 358 Ill. App. 3d at 1033. Knowledge could be inferred from several factors, including: (1) the visibility of the weapon from defendant's location in the vehicle, (2) the amount of time in which defendant had an opportunity to observe the weapon, (3) gestures or movements made by defendant that would suggest an effort to retrieve or conceal the weapon, and (4) the size of the weapon. See *Hampton*, 358 Ill. App. 3d at 1033; *People v. Bailey*, 333 Ill. App. 3d 888, 891-92 (2002).

■ According to the State's witnesses, the handgun was in plain view on the floor of the car. Although Lambrecht described the gun as underneath the seat, the remainder of his testimony and a photograph make clear that the whole gun was in fact in plain view right behind the driver's seat. The photograph depicts a black gun on a red-carpeted floor, with nothing else in the immediate vicinity. And because the front passenger seat was broken, the seat was resting in the backseat, right next to where the gun was found. The size of the gun made it easily identifiable as a gun, and defendant had not just entered the car but had been in the car for a sufficient period of time to imply knowledge. *Cf. Hampton*, 358 Ill. App. 3d at 1033 (evidence insufficient to imply possession where defendant was driving someone else's car, he had been driving the car for only a few minutes before he was arrested, and the gun was not in plain view). As to control, Lambrecht testified that the gun was in a position where defendant easily could have reached over and placed it there. See *People v. O'Neal*, 35 Ill. App. 3d 89, 91 (1975) (contraband may be considered under the defendant's immediate control if it is within his easy reach). Thus, the jury could reasonably infer that defendant knowingly possessed the weapon. *Rangel*, 163 Ill. App. 3d at 740 (defendant found to have knowingly possessed a weapon where, among other things, the weapon was in plain view on the floor of the car where defendant had been sitting just before he exited and was apprehended by police).

Because the weapon was in plain view on the floor of the car, this case is distinguishable from defendant's cited cases, where the weapon was found in a sock in the glove compartment of the car or was hidden under the seat and was found by police only after an inventory search of the car. See *Hampton*, 358 Ill. App. 3d at 1030; *Bailey*, 333 Ill. App. 3d at 890.

Furthermore, defendant's flight from the car following the traffic stop supports the inference that defendant possessed the gun. Although he was not running, defendant still ignored the officer's demands to stop, and defendant stopped only when grabbed by the officer. In addition, defendant gave a false name to the officer. Defendant's actions support the jury's finding. See *People v. Hart*, 214 Ill. 2d 490, 518-19 (2005) (flight from police officers was a circumstance from which the trier of fact could infer consciousness of guilt); *People v. Haygood*, 60 Ill. App. 2d 70, 78 (1965) (use of a fictitious name is an indication of flight because it discloses the intention to conceal one's identity and to evade arrest).

Moreover, the fact that the backseat passenger also had access to the gun does not defeat a finding that defendant possessed the gun.

> " 'The law is clear that the exclusive dominion and control required to establish constructive possession is not diminished by evidence of others' access to the contraband. [Citation.] When the relationship of others to the contraband is sufficiently close to constitute possession, the result is not vindication of the defendant, but rather a situation of *joint* possession. To hold otherwise would enable persons to escape criminal liability for possession of contraband by the simple expediency of inviting others to participate in the criminal enterprise.' (Emphasis added.)" *People v. Hill*, 226 Ill. App. 3d 670, 673 (1992), quoting *People v. Williams*, 98 Ill. App. 3d 844, 849 (1981).

Thus, the backseat passenger's access to the gun does not defeat defendant's constructive possession of the gun.

On this record, we find no reason to upset the jury's ultimate determination. The jury could reasonably conclude from the evidence presented that defendant knowingly possessed the gun and was, thus, proven guilty beyond a reasonable doubt.

■ Next, defendant argues that, over his objection, the trial court erroneously admitted the police officers' testimony that the area of defendant's arrest was known as a high-crime area, particularly known for drug trafficking, weapons offenses, and homicides, despite the fact that the evidence was irrelevant to the charge here. We agree that the evidence was improperly admitted but we deem the error harmless.

Evidence that suggests that the defendant has engaged in prior criminal activity or is intending to engage in criminal activity should not be admitted unless it is relevant to the crime for which he is being tried. *People v. Lewis*, 165 Ill. 2d 305, 345-46 (1995); *People v. Lehman*, 5 Ill. 2d 337, 342 (1955). Other-crimes evidence is relevant if it places the defendant in proximity to the time and place of the offense, proves a fact in issue, rebuts an alibi defense, demonstrates a consciousness

of guilt, or establishes motive, intent, absence of mistake, identity, or a common design or scheme. *People v. McCray*, 273 Ill. App. 3d 396, 402 (1995); *People v. Diaz*, 78 Ill. App. 3d 277, 279-80 (1979). "The fact that [other-crimes] evidence comes to the jury by way of inference does not alter its potentially prejudicial character." *Lewis*, 165 Ill. 2d at 346. "The rationale for this rule is that such evidence overpersuades the [jury], which is likely to convict the defendant merely because of feelings he is a bad person deserving punishment, rather than on the basis of facts related to the offense on trial." *McCray*, 273 Ill. App. 3d at 400. The State's desire to assuage jury curiosity or to show how the investigation unfolded does not justify the risk of admitting potentially prejudicial other-crimes evidence. *McCray*, 273 Ill. App. 3d at 401; see *Lewis*, 165 Ill. 2d at 346 (evidence of other crimes is not admissible merely to show how the investigation unfolded *unless* such evidence is also relevant to specifically connect the defendant with the crimes for which he is being tried). Admitting evidence as relevant is within the sound discretion of the trial court, and the trial court's decision will not be reversed absent an abuse of discretion. *People v. Agee*, 307 Ill. App. 3d 902, 904 (1999).

Here, the officers' testimony concerning the previous crimes in the area was irrelevant because it did not connect defendant to the offense for which he was being tried, nor did it rebut an alibi defense, demonstrate a consciousness of guilt, or establish motive, intent, absence of mistake, identity, or a common design or scheme. See *Diaz*, 78 Ill. App. 3d at 279-80. Thus, the trial court abused its discretion in admitting the testimony. See *Agee*, 307 Ill. App. 3d at 904 (officer's testimony that the area was a " 'high narcotic activity area' " was irrelevant to weapons charge and, therefore, was improper).

Although it was error to admit such evidence, the error does not require reversal. To warrant reversal, the improper evidence must be so prejudicial as to deny the defendant a fair trial, *i.e.*, it must have been a material factor in his conviction such that without the evidence the verdict likely would have been different. *People v. Cortes*, 181 Ill. 2d 249, 285 (1998). If the evidence is unlikely to have influenced the jury, its admission will not warrant reversal. See *Cortes*, 181 Ill. 2d at 285; see also *People v. Nieves*, 193 Ill. 2d 513, 530 (2000) (the improper introduction of other-crimes evidence is harmless error when a defendant is not prejudiced or denied a fair trial based upon its admission).

In light of the evidence presented, the erroneously admitted testimony could not have altered the outcome of the case and, therefore, did not prejudice defendant. First, the jury was properly

aware that defendant was a felon. But more importantly, the jury properly knew that a gun was in the car. Where this took place, high-crime area or not, would not impact a jury's determination of whether defendant knew the gun was there and whether he had immediate and exclusive control over the area where the gun was found. Thus, the error was harmless and did not "overpersuade" the jury on the issue of defendant's guilt. See, *e.g.*, *Nieves*, 193 Ill. 2d at 530 (one isolated and cryptic reference to the defendant's unrelated criminal activity in New York harmless error); *People v. Kliner*, 185 Ill. 2d 81, 147 (1998) (other-crimes evidence that the defendant "pistol-whipped" his former girlfriend harmless error); *Cortes*, 181 Ill. 2d at 285 (reference to the fact that the defendant had been involved in another criminal case harmless error); *Lewis*, 165 Ill. 2d at 347 (testimony that the defendant was in police custody in California harmless error); *People v. Hayes*, 139 Ill. 2d 89, 145-46 (1990) (testimony that witness identified a photograph of the defendant in the photo books at the violent crimes police station was harmless error).

This case is distinguishable from *Agee*, cited by defendant. In *Agee*, the arresting officer testified that he saw the defendant perform a " 'hand to hand transaction' " with another individual in an area known for drug activity. *Agee*, 307 Ill. App. 3d at 903. When the officer approached the defendant, the defendant threw something in nearby bushes. *Agee*, 307 Ill. App. 3d at 903. The officer searched the bushes and found a gun. *Agee*, 307 Ill. App. 3d at 903. The defendant, however, testified that he was merely walking home when he stopped to talk to a neighbor. *Agee*, 307 Ill. App. 3d at 903. The defendant denied any knowledge of the gun found in the bushes and alleged that he was being framed by the officer. *Agee*, 307 Ill. App. 3d at 903-04, 905. On appeal, the defendant's weapons conviction was reversed because of the evidence of drug activity in the area.

In *Agee*, the reviewing court noted that the outcome depended on whether the jury found the officer or the defendant more credible. *Agee*, 307 Ill. App. 3d at 906. Thus, the inference that the defendant was involved in drug trafficking at the time of his arrest could have affected the weight the jury attributed to his testimony. *Agee*, 307 Ill. App. 3d at 906.

Here, the outcome depended on whether defendant's presence in the area of the gun was such that he constructively possessed it. The jury could not have inferred defendant's guilt from the fact that the area of the gun was itself within a wider area of crime.

904

Accordingly, the judgment of the circuit court of Winnebago County is affirmed.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.