2020 IL App (1st) 180263-U

No. 1-18-0263

Order filed May 20, 2020

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 12015 |
| | ) | |
| GEORGE LUMPKIN, | ) | Honorable |
| | ) | Mauricio Araujo, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Ellis and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for aggravated unlawful use of a weapon is affirmed where a rational factfinder could find that the evidence established he constructively possessed a firearm.

¶ 2    Following a bench trial, defendant George Lumpkin was found guilty of aggravated unlawful use of a weapon (AUUW) and sentenced to one year's imprisonment. He appeals, arguing that the State did not prove he possessed the weapon. We affirm.

¶ 3      Defendant was charged by indictment with eight counts of AUUW. The State proceeded on count I, which alleged that defendant knowingly possessed an uncased, loaded, and immediately accessible firearm in a vehicle while not on his own land, abode, legal dwelling or fixed place of business, or the land or dwelling of another with that person's permission, and without a concealed carry license (CCL) (720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2016)).

¶ 4      At trial, Chicago police officer Dibiase testified that at 12:50 a.m. on July 17, 2016, he and his partner, later identified as Officer Habiak, were in a marked vehicle near the intersection of Campbell Avenue and 70th Street when a vehicle failed to stop at a stop sign.[1] Dibiase activated his vehicle's emergency lights, curbed the offending vehicle, and approached the driver's side. As he approached, the driver made "a quick furtive movement towards the center console," moving "his shoulders and head."

¶ 5      Dibiase asked the driver, whom he identified as defendant in court, for his driver's license and proof of insurance. Defendant could not produce the documents, so Dibiase removed him from the vehicle and arrested him. As Dibiase escorted defendant away, he saw the "butt of a handgun" between the driver's seat and the center console. The officers removed the other occupants, a man in the front passenger seat later identified as Trevon Thurman, and a woman in the backseat later identified as "Nya." Then, Dibiase retrieved the firearm from near the driver's seatbelt buckle, which was the area towards which defendant made the furtive movement and was "within inches" from where defendant sat. Dibiase next looked beneath the driver's seat and "observed an extended magazine" which he believed matched the firearm. He brought the magazine and firearm, which

---

[1] The officers' first names do not appear in the report of proceedings.

held nine rounds, to the rear of the vehicle. When Dibiase did so, Thurman fled from Habiak, who pursued Thurman and took him back into custody.

¶ 6    On cross-examination, Dibiase did not recall if defendant's seatbelt was buckled. Dibiase first observed the firearm after removing and handcuffing defendant. He did not recall whether the magazine was in a wooden box. Dibiase never saw defendant handle the firearm or magazine. Defendant behaved respectfully and complied with Dibiase's commands. Thurman was charged with reckless conduct. On redirect, Dibiase said he did not notice Thurman or Nya make any movements when he initially approached the vehicle.

¶ 7    The State entered stipulations that defendant did not have a valid CCL on the date of the offense, and that the vehicle belonged to defendant.

¶ 8    The defense moved for a directed verdict, arguing that the State's evidence did not establish possession and instead supported the inference that Nya placed the magazine under the driver's seat and Thurman placed the firearm between the center console and driver's seat when Dibiase removed defendant from the vehicle. In support, defense counsel contrasted Thurman's flight with defendant's compliant behavior. The State responded that the firearm was "immediately accessible" to defendant because it was "[r]ight next to him" and defendant made a "furtive movement" when the officers approached his vehicle. The court denied the motion.

¶ 9    The defense entered stipulations that Dibiase did not issue defendant a ticket for a seatbelt violation, Thurman was the front seat passenger, and if called, Habiak would testify that he removed Thurman from the vehicle and Thurman fled while being handcuffed.

¶ 10    Thurman testified he could not remember if he was arrested on July 17, 2016. He was not willing to answer questions about that day because his lawyer told him to "plead the Fifth."

¶ 11    Defendant testified that he was driving with Thurman and Nya on July 16, 2017. Nya had a brown box when she entered the vehicle, and Thurman showed defendant a firearm "on his waist." Defendant never handled the firearm. Someone siting in the backseat could have reached under the front seats.

¶ 12    Dibiase curbed defendant, approached the driver's side window, and asked for defendant's driver's license and proof of insurance. Defendant retrieved his insurance card from the glove box and gave it to Dibiase, who told defendant to exit the vehicle and go to the "trunk." Defendant complied. Another officer removed Thurman and also brought him to the trunk. Defendant did not see Nya exit the vehicle.

¶ 13    The officers searched the vehicle and then approached the trunk with Thurman's firearm. Defendant did not know what Thurman did with the firearm after placing it in his waistband or where the officers found it. The officers also had Nya's brown box. Defendant did not know its contents until the officers showed him that it contained "[e]xtra clips." At that point, Thurman fled.

¶ 14    On cross-examination, defendant said he was wearing his seatbelt when the officers signaled him to pull over. He did not see the firearm on Thurman when Dibiase removed defendant from the vehicle or see Thurman place the firearm near the center console or defendant's seatbelt buckle. The officers removed Thurman and Nya from the vehicle 30 to 45 seconds after Dibiase removed defendant.

¶ 15    In closing, the State argued that the evidence established defendant constructively possessed the firearm because Dibiase found it "maybe six inches" from defendant's location, the firearm was visible, only defendant made a furtive movement towards the firearm's location, and defendant's testimony was incredible. Defense counsel conceded defendant knew about the

firearm but argued the evidence did not establish control. Instead, according to counsel, the evidence showed Thurman placed the firearm near the driver's seatbelt buckle after Dibiase removed defendant from the vehicle. Counsel again emphasized that Thurman's flight suggested guilt when contrasted with defendant's compliant behavior, and submitted that defendant's furtive movement was actually him retrieving insurance documents from the glove box.

¶ 16    The court found defendant guilty for "[t]he reasons *** the State argued" and denied defendant's motion for a new trial. The matter moved immediately to a sentencing hearing, where the court imposed one year's imprisonment and denied defendant's motion to reconsider sentence.

¶ 17    On appeal, defendant contends that the State's evidence was insufficient to demonstrate he constructively possessed the firearm because the evidence did not establish the element of control.

¶ 18    We review a challenge to the sufficiency of the evidence by determining whether a rational factfinder could find that the evidence, taken in the light most favorable to the State, established the elements of the crime beyond a reasonable doubt. *People v. Harris*, 2018 IL 121932, ¶ 26. It is the factfinder's role to weigh the evidence, draw reasonable inferences therefrom, and judge witness credibility, and the reviewing court will not substitute its judgment for that of the trial court on these matters. *People v. Bradford*, 2016 IL 118674, ¶ 12. The trier of fact need not seek out any explanation consistent with innocence and raise it to reasonable doubt. *People v. Hardman*, 2017 IL 121453, ¶ 37. Reversal is improper unless the evidence is "so unreasonable, improbable, or unsatisfactory" that it creates reasonable doubt of the defendant's guilt. *People v. Wright*, 2017 IL 119561, ¶ 70.

¶ 19    To establish AUUW as charged here, the State must prove a defendant knowingly possessed an uncased, loaded, and immediately accessible firearm in a vehicle while not on his

own land, abode, legal dwelling or fixed place of business, or the land or dwelling of another with that person's permission, and without a CCL. 720 ILCS 5/24-1.6(a)(1), (a)(3)(A-5) (West 2016). Defendant does not contest the sufficiency of the evidence that he lacked a CCL.

¶ 20    Possession can be actual or constructive. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 21. The State here proceeded on a constructive possession theory. To prove constructive possession, the State must establish a defendant's knowledge and control of an item. *Id.* ¶ 22. Here, defendant concedes the State's evidence was sufficient to establish his knowledge of the firearm, and only challenges the evidence regarding control.

¶ 21    To establish control, the State must prove that a defendant had "immediate and exclusive control" over the location where contraband was recovered. *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27. The factfinder may infer that a defendant had immediate and exclusive control when an item was recovered from a location within the defendant's reach in a vehicle. *People v. Ingram*, 389 Ill. App. 3d 897, 900 (2009). The fact that another person had access to the location does not prevent a finding that the defendant had immediate and exclusive control. *Id.* at 901.

¶ 22    Here, Dibiase and Habiak curbed a vehicle with three occupants—defendant, who was driving, Thurman, the front seat passenger, and Nya, the woman in the backseat. As Dibiase approached the vehicle, only defendant made a movement towards the area from which the firearm was later recovered. That location, near the driver's seatbelt buckle between the driver's seat and the center console, was in close proximity to defendant, as was the extended magazine that Dibiase recovered beneath the driver's seat.

¶ 23    This evidence, viewed in the light most favorable to the State, was sufficient for a reasonable factfinder to conclude that defendant constructively possessed the firearm. The trial

court was entitled to infer defendant's control of the weapon from the fact that it was found beside the driver's seat and he was driving the vehicle when it was curbed. See *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17 ("The defendant's control over the location where the weapons are found gives rise to an inference that he possessed the weapons."). As the firearm was tucked by defendant's seatbelt buckle and the console, the evidence also supports the inference that defendant's control of the area was immediate and exclusive. See *Ingram*, 389 Ill. App. 3d at 900. Thus, defendant was not merely present in a vehicle in which contraband was found. Rather, his conduct in the vehicle, his location, and the location of the firearm, taken together, provided evidence from which the trial court could infer control.

¶ 24    Defendant argues that the evidence was insufficient to prove control because it could support an inference that Thurman, who fled from police, possessed the weapon. We disagree. First, the trial court was not obliged to accept defendant's proposed inference regarding Thurman's flight and raise it to the level of reasonable doubt. See *Hardman*, 2017 IL 121453, ¶ 37. Instead, it is the factfinder's role to decide between competing inferences. See *People v. Petermon*, 2014 IL App (1st) 113536, ¶ 43 (quoting *People v. Green*, 339 Ill. App. 3d 443, 452 (2003) ("The decision as to which of competing inferences to draw from the evidence is the responsibility of the trier of fact.")). Second, the fact that Thurman may also have had access to the location from which the firearm was recovered does not preclude the trial court's inference that defendant had immediate and exclusive control of the location. See *Ingram*, 389 Ill. App. 3d at 901. Viewing the evidence in the light most favorable to the State, a rational factfinder could have inferred that defendant constructively possessed the firearm for purposes of AUUW.

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 26     Affirmed.