**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 170851

Order filed November 25, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 13th Judicial Circuit, Bureau County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-17-0851 Circuit No. 17-CF-62 |
| | ) | |
| SHERWOOD A. LYLES, | ) ) | Honorable Cornelius J. Hollerich, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE LYTTON delivered the judgment of the court.
Justices Carter and Schmidt concurred in the judgment.

**ORDER**

¶ 1     *Held*: Evidence was insufficient to show that defendant had constructive possession of the methamphetamine found inside the vehicle in which he was a passenger.

¶ 2     Defendant, Sherwood A. Lyles, appeals his conviction for unlawful possession of a controlled substance (methamphetamine), for which he was sentenced to 22 years in prison. On appeal, he argues that (1) the State failed to prove that he had actual or constructive possession of methamphetamine found in the vehicle in which he was a passenger, (2) the trial court erred in denying his motion to suppress evidence based on the unlawful search of the vehicle, (3) the trial

court erred in allowing evidence of his 1997 conviction for conspiracy to distribute cocaine, and (4) the court erred in allowing the State to introduce video evidence of defendant in a casino several days before the interstate stop. We find defendant's sufficiency of the evidence challenge dispositive and reverse his conviction.

¶ 3                                    I. BACKGROUND

¶ 4        In July 2017, defendant was riding as a passenger in a minivan with three people on Interstate 80. Officer Timothy Sweeney observed the minivan following too closely behind another vehicle and initiated a traffic stop. The canine unit arrived shortly thereafter. Following an alert of the drug-detection dog, officers recovered a duffel bag containing approximately 1355 grams of methamphetamine in the back of the minivan. All four people in the vehicle were arrested and taken into custody.

¶ 5        Defendant was charged with unlawful possession of a controlled substance for possessing 900 grams or more of methamphetamine, a Class X felony (720 ILCS 646/60(a), (b)(6) West 2016)). He filed a motion to suppress, alleged that police stopped the minivan without reasonable suspicion and that they searched the vehicle without probable cause. At the motion to suppress hearing, Sweeney testified that he stopped the minivan because the vehicle was following too closely behind a truck in violation of section 11-710 of the Illinois Vehicle Code (625 ILCS 5/11-710 (West 2016)). He did not observe the vehicle commit any other traffic violation.

¶ 6        As he approached the minivan, Officer Sweeney noticed four people inside, including the driver, Robert Dyas. Dyas stated that he did not have a driver's license but gave him a California state identification card and a rental agreement. He told Sweeney that he had rented the minivan in Los Angeles three days earlier and was traveling with his companions to Gary, Indiana. The rental agreement indicated that the vehicle was rented on July 24, 2017, by Charmaine Turner and was due back in Los Angeles on July 31, 2017, and listed the authorized drivers as Mary Brown

2

and Steven Nicholas. Brown was riding in the front passenger seat of the minivan. She identified herself as Dyas's wife and said that they were headed to Cleveland, Ohio.

¶ 7    Sweeney asked Dyas to follow him back to his squad car to complete the written warning. He testified that Dyas was nervous, his breathing was heavy, he continuously yawned and belched, and he kept biting his fingers.

¶ 8    Mendota Police Officer Michael Hammen arrived at the scene with his dog "Bailey" a few minutes after Sweeny initiated the stop. Hammen testified that he walked Bailey to the minivan and asked one of the passengers to roll up all the windows to eliminate any distractions. The passenger complied. He then walked around the vehicle with Bailey at his side. The dog altered at the front bumper, indicating there was contraband in the vehicle.

¶ 9    The trial court denied defendant's motion to suppress. The court found that Sweeney's testimony provided an objective basis for a reasonable belief that the minivan committed a traffic violation and that the dog-sniff alert established probable cause to search the vehicle.

¶ 10    In preparation for trial, the State filed two motions *in limine*. The first motion was to admit defendant's 1997 conviction in federal district court for conspiracy to distribute cocaine base and cocaine powder. The State argued that the conviction was relevant to show defendant's knowledge. The trial court agreed and allowed the motion. The second motion to admit a video of defendant receiving $4000 in cash at a Cleveland casino was denied.

¶ 11    At trial, Sweeney testified that around 9 a.m. on July 27, 2017, he pulled over a minivan driven by Dyas for following another vehicle too closely. Sweeney's onboard computer informed him that the vehicle was a rental. As he approached the vehicle, he observed four people inside: Dyas, who was driving; Brown, who siting in the front passenger seat; Elizabeth Jones, who was riding in the back seat; and defendant, who was also riding in the back seat. He informed Dyas that he was following the vehicle in front of him too closely. Brown, the front seat passenger, told

3

Sweeney that they were traveling to Cleveland. Dyas gave Sweeney the rental agreement and walked back to the squad car with Sweeney.

¶ 12    While Sweeney completed the warning ticket, he and Dyas talked. Dyas told him that the group was headed to Omaha, Nebraska, but then corrected himself and said they were going to Gary, Indiana. During the conversation, dispatch informed Sweeney that Dyas did not have a valid driver's license. Dyas told him that he did not have a valid license because he had an unpaid ticket in Cleveland. Sweeney then asked Dyas about the passengers in the van, and Dyas said that he was traveling with his wife, an uncle, and a cousin.

¶ 13    Sweeney testified that after the drug-dog alerted, officers on the scene recovered a duffel bag with two bags of methamphetamine inside. Sweeney identified the bags in court and stated that one bag weighed approximately 1.6 pounds and the other weighed approximately 1.4 pounds. While officers placed Dyas in handcuffs at the scene, he admitted that the methamphetamine found in the vehicle was his. Sweeney testified that Dyas later admitted to using methamphetamine as well.

¶ 14    All four occupants of the vehicle were arrested and transported to the Illinois State Police district headquarters. Sweeney stated that defendant "didn't seem surprised to be arrested." At State Police headquarters, defendant denied any knowledge of the drugs in the vehicle and said he was just getting a ride to Ohio.

¶ 15    Sweeney also identified a bag containing two cell phones, marked as State's Exhibit No. 7. He testified that the phones "were determined to be [defendant's] cell phones." After establishing his experience as a drug interdiction officer, he testified that it was "not uncommon for us to make arrests or seizures with large amounts of narcotics where suspects have two cell phones."

4

¶ 16       On cross-examination, Sweeney stated that Dyas openly admitted that the bags of methamphetamine found in the duffel bag belonged to him and that he planned to sell them. Dyas indicated that the duffel bag was his throughout the investigation. Sweeney further testified that both female passengers were found to be in possession of two additional bags of methamphetamine. Jones was carrying a bag in a girdle under her clothing that investigators discovered following a search of her person. Another bag was found underneath the front passenger seat of Sargent Clint Thulen's squad car after he transported Brown to district headquarters. Brown admitted to carrying the methamphetamine in a girdle strapped to her waist and hiding the bag in the squad car before she arrived at the station. Sweeny acknowledged that no drugs were found on defendant's person.

¶ 17       Robert Cessna, with the Tri-DENT drug task force, testified that he found two packages of a chunky, powdery substance in vacuum-sealed bags in the rear of the minivan. The vacuum-sealed bags were inside a duffel bag that was full of men's clothing. He also found a silver bag in the rear of the vehicle that contained women's clothing. There was nothing else in the vehicle, aside from some blankets and pillows.

¶ 18       Officer John Beery interviewed defendant at district headquarters. Defendant told him that he was traveling from Los Angeles, California, to Cleveland, Ohio to "sort out" a supplemental Social Security income issue. He knew Dyas and was riding along with him to Ohio. Defendant claimed that he did not know Jones or Brown. He denied knowing anything about the methamphetamine and stated that he was unaware that it was in the minivan. He told Beery that he was "too smart" to occupy a vehicle with drugs in it and that he would have mailed the drugs instead of driving with them in the minivan. During the interview, defendant admitted that he owned one of the cell phones found in the minivan.

5

¶ 19        Sergeant Thulen testified that he transported defendant and Jones to the Bureau County jail following their interviews at district headquarters. During the trip, defendant asked twice if the cameras in the interior of the vehicle were turned on and recording. As they traveled, Jones and defendant discussed the legal implications of the situation. A video recording of Jones and defendant riding in the squad car was played for the jury. In the video, defendant is adamant that he had nothing to do with the methamphetamine found in the minivan and repeatedly tells Jones that he did not know about the drugs. He says he was "just getting a ride" and suggests the group is being "set up" and then laughs.

¶ 20        Michelle Dierker with the State Police Crime Lab confirmed that the substance in the packages recovered from the minivan contained methamphetamine. Specifically, she testified that: (1) the two plastic bags recovered from the duffel bag contained 1355.6 grams of methamphetamine; (2) the drugs recovered from Jones's person weighed 1330.3 grams; and (3) the bags found in Thulen's vehicle contained 1586.8 grams of methamphetamine. She stated that the plastic bags recovered from the duffel bag were not tested for latent fingerprints.

¶ 21        The State then moved to admit a certified copy of defendant's 1997 federal conviction for conspiracy to distribute cocaine base and cocaine powder. The trial court admitted the exhibit over defendant's objection and issued a limiting instruction to the jury that the prior conviction could only be considered for the purpose of establishing knowledge.

¶ 22        The State brought an oral motion to reconsider the court's ruling barring the admission of the casino video, arguing that the evidence was relevant to show knowledge. The State further maintained that because defendant had large sums of cash and because defendant told Officer Beery that he was on supplement Social Security income, the unexplained cash raised questions of credibility. Defense counsel asserted that the video lacked the proper foundation and, in the

alternative, lacked relevance and was highly prejudicial. The trial court overturned its earlier ruling and allowed the State to use the videos.

¶ 23     Officer Hammen then testified, as an expert in the street value of narcotics, that value of methamphetamine found in the minivan was approximately $408,600. He further testified that "in the drug trade, people who are selling narcotics and transporting narcotics" often use two phones. He explained that one is typically used for personal calls and one is used as "a burner phone, a throwaway phone" because it's difficult to trace calls on them. He examined the two cell phones marked as State's Exhibit No. 7 and stated that is was "very well possible" that they were "throwaway phones."

¶ 24     Based on his investigation, Hammen also learned that defendant had been at a casino in Cleveland, Ohio, 11 days prior to his arrest in this case. Videos from the casino were then admitted over defendant's previous objections. Hammen identified defendant on the videos and explained the depictions on the screen as they were played for the jury. The videos showed defendant entering the casino at 7:48 p.m. Shortly after entering the casino, he approaches the roulette table and gives the dealer $2000 in exchange for $2000 in chips. Several minutes later, defendant is shown at the blackjack table giving the dealer $2000 in exchange for $2000 in chips. At 8:29 p.m., he cashes in his chips and receives $4000 in cash.

¶ 25     In closing arguments, the State argued that defendant had constructive possession of the drugs discovered in back of the minivan. The jury found defendant guilty of unlawful possession of methamphetamine, and the trial court sentenced him to 22 years in prison.

¶ 26                                          II. ANALYSIS

¶ 27     Defendant first argues that his conviction should be reversed because the State failed to prove beyond a reasonable doubt that he had actual or constructive possession of the methamphetamine found in the duffel bag in back of the minivan.

7

¶ 28    A sufficiency of the evidence argument requires us to consider whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). Under the reasonable doubt standard, it is not the function of this court to retry the defendant, reweigh trial evidence, or otherwise undermine the fact finder's judgment. *People v. Radford*, 2018 IL App (3d) 140404, ¶ 30. "But merely because the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee the reasonableness of its decision." *Ross*, 229 Ill. 2d at 272. A criminal conviction will stand unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of the defendant's guilt. *Id.*

¶ 29    A person commits the offense of unlawful possession of methamphetamine when the accused knowingly possesses methamphetamine or a substance containing methamphetamine. See 720 ILCS 646/60(a) (West 2016). On appeal, defendant contends that the State failed to prove that he "knowingly possessed" the methamphetamine that police discovered in the minivan in which he was a passenger. The State acknowledges that there is no evidence that defendant actually possessed the controlled substance but claims the evidence was sufficient to establish constructive possession.

¶ 30    Where no evidence exists of actual possession of the controlled substance, the State must prove that a defendant had constructive possession to establish the defendant's guilt. *People v. Tates*, 2016 IL App (1st) 140619, ¶ 19. To prove constructive possession, the evidence must demonstrate that the defendant had knowledge of the presence of the controlled substance and had immediate and control over the area where the controlled substance was found. *People v. Hunter*, 2013 IL 114100, ¶ 19. Evidence establishing constructive possession is often entirely circumstantial. *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002). Nevertheless, "it is

8

incumbent upon the State to present such evidence." *People v. Bailey*, 333 Ill. App. 3d 888, 891 (2002).

¶ 31    The State cannot rely on a defendant's mere presence to establish knowledge that a controlled substance is in a vehicle. See *People v. Ingram*, 389 Ill. App. 3d 897, 900 (2009); see also *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000) (proximity to contraband is insufficient on its own to prove possession), and *People v. Adams*, 242 Ill. App. 3d 830, 833 (1993) (mere presence in vicinity of controlled substance cannot establish constructive possession). A defendant acts with knowledge when he or she is aware of the existence of facts that make his or her conduct unlawful. *People v. Gean*, 143 Ill. 2d 281, 288 (1991). Knowledge of a controlled substance may be inferred from several factors, including (1) it's visibility from the defendant's location in the vehicle, (2) the amount of time in which the defendant had an opportunity to observe it, (3) gestures made by the defendant that would suggest an effort to retrieve or conceal it, and (4) the size or amount of it. See *Bailey*, 333 Ill. App. 3d at 891-92.

¶ 32    In this case, the circumstantial evidence was insufficient to prove defendant knowingly possessed the methamphetamine found in back of the minivan. No evidence suggested that the methamphetamine was in plain view or visible from defendant's position in the minivan. Two packages of the controlled substance were hidden in a duffel bag in the back compartment of the vehicle, and the remaining packages were concealed in girdles underneath the clothing of the female passengers. Further, defendant did not have any possessory interest in the minivan. He was neither the driver nor the authorized driver under the rental agreement. Moreover, defendant did not attempt to hide or conceal the drugs, unlike other passengers in the minivan. He consistently and admittedly denied any knowledge that there were drugs in the vehicle. When all this evidence is considered together, even in a light most favorable to the prosecution, it cannot be said that the State met its burden of proof.

9

¶ 33    We acknowledge the State's argument that circumstantial evidence and the reasonable inferences drawn from it may provide proof of a defendant's guilt beyond a reasonable doubt. The State argues that a person may have constructive possession of an illegal substance even if other individuals have access to the same area where the controlled substance is discovered based on reasonable inferences, and we agree. See *Tates*, 2016 IL App (1st) 140619, ¶ 25; *People v. Moreno*, 334 Ill. App. 3d 329, 343 (2002). Here, however, there is no evidence to support a *reasonable* inference that defendant possessed the methamphetamine recovered from the minivan.

¶ 34    At trial, the State offered the following circumstantial evidence to prove defendant's guilty of unlawful possession of the controlled substance found in the vehicle: (1) two cell phones; (2) a prior conviction from 1997 for conspiracy to distribute cocaine base and cocaine powder; and (3) a video of defendant allegedly laundering money at a Cleveland casino 11 days before the stop. We find this evidence insufficient.

¶ 35    While it may be true, as Hammen testified, that some drug dealers possess a personal phone and a throwaway phone, the evidence at trial failed to establish that defendant possessed either of the phones in furtherance of a drug transaction. Moreover, defendant admitted that he owned one of the phones but did not make any statement of ownership regarding the second. Thus, any conclusion that defendant had constructive possession of the methamphetamine based on his possession of two cell phones is mere speculation. Although a reviewing court must allow all reasonable inferences from the record in favor of the prosecution, a reviewing court may not allow unreasonable or speculative inferences. See *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004) (fact finder's judgment must be reasonable in light of the record). Without additional evidence, a reasonable juror could not infer defendant's guilt based on his use of two cell phones.

¶ 36    Defendant's 1997 conviction for conspiracy to distribute cocaine is also insufficient evidence to prove defendant guilty beyond a reasonable doubt of unlawful possession of

10

methamphetamine. The State offered defendant's prior conviction to the jury to establish knowledge, as defendant's knowledge and control over the methamphetamine found in the minivan was at issue. Such evidence may be relevant to show defendant intent to commit a drug crime. See *People v. Watkins*, 2015 IL App (3d) 120882, ¶ 46 (noting that courts have routinely allowed evidence of a defendant's prior drug transactions to establish defendant's intent to deliver the drug for which the defendant is currently charged). However, it has no relevance as to defendant's knowledge of methamphetamine in the minivan. While a prior intent to deliver conviction may be relevant to show intent to deliver drugs for which a defendant is currently charged, it is irrelevant to prove unlawful possession of a different controlled substance 20 years later. Even viewing this evidence in a light most favorable to the prosecution, we cannot conclude that a reasonable juror could find that defendant had constructive possession of the methamphetamine in the duffel bag in back of the minivan.

¶ 37        The casino video also fails to prove defendant's constructive possession. Viewing the evidence in the light most favorable to the State and allowing for all reasonable inferences, the video shows a possibility that defendant laundered money 11 days before his arrest in this case. It may be reasonable to infer that someone using large sums of money to purchase casino chips and then cashing in those chips a short while later may be doing so to conceal evidence of a drug transaction. But that inference is reasonable only after the sale of the controlled substance or the illegal drug transaction has occurred. The video recorded in a Cleveland casino several days before officers searched the minivan in Illinois proves nothing about defendant's knowledge of the methamphetamine recovered from the vehicle that had yet to be sold.

¶ 38        In this case, there was no evidence linking defendant to the drugs found in the vehicle. There was no evidence that defendant had any controlled substance on his person or otherwise in his possession. There was no evidence that defendant had knowledge of the methamphetamine in

11

the minivan, that he had possession of the duffel bag, or that he knew the group was transporting drugs. There was evidence, however, that Dyas owned the methamphetamine found inside the duffel bag, that the two female passengers had the remaining methamphetamine concealed under their clothing, and that defendant denied any knowledge of drugs in the vehicle. When all this evidence is considered, we find the State failed to prove defendant guilty of unlawful possession of a controlled substance beyond a reasonable doubt.

¶ 39　　　Because the evidence was insufficient, we reverse defendant's conviction. Our reversal of defendant's conviction makes it unnecessary for us to consider his alternative arguments.

¶ 40　　　　　　　　　　　　　　III. CONCLUSION

¶ 41　　　Defendant's conviction for unlawful possession of a controlled substance (methamphetamine) is reversed.

¶ 42　　　Reversed.