2023 IL App (2d) 210642-U
No. 2-21-0642
Order filed February 9, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-2197 |
| ALEX MEDINA, | ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

---

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*: Defendant's conviction of possession with intent to deliver a controlled substance was affirmed based on (1) the parties' stipulation at trial that the contraband (a brick of cocaine) was possessed with intent to deliver and (2) evidence that (a) the police witnessed suspicious activity in which an object resembling a kilogram brick of narcotics was delivered to a Malibu, (b) when the police stopped the Malibu, the brick was at defendant's feet in the rear passenger compartment, and (c) during a phone call from jail after his arrest, defendant remarked that he had told the other occupants of the Malibu not to speak to the police.

¶ 2   Following a bench trial in the circuit court of Kane County, defendant, Alex Medina, was convicted of unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2)(D) (West 2016)) and was sentenced to a 15-year prison term. On appeal, defendant

argues that the State failed to prove beyond a reasonable doubt that he possessed the controlled substance. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The following evidence was adduced at trial. On December 19, 2016, Matthew Kampman, an agent with the United States Department of Homeland Security, led a task force investigating narcotics activity. Aurora police officer Paul Lindley and West Chicago police officer Mike Potapczak were assigned to the task force. At about 5:30 p.m., the task force was conducting surveillance on a Dodge Durango. A Chevy Malibu approached the Durango in a parking area at 111 Jackson Street in Naperville. Both vehicles then proceeded to Van Buren Street, where the Malibu parked in front of the Durango. The Durango's driver walked to the Malibu carrying a black plastic bag with "what appeared to be *** a rectangle object being weighted at the bottom." In Kampman's experience, the rectangular object was consistent in shape and size with a kilogram brick of narcotics. The Durango's driver entered the backseat of the Malibu through the rear driver's-side door. He remained in the Malibu for a couple of minutes and then emerged without the bag. The two vehicles then drove off, and the task force followed the Malibu, which headed toward Aurora.

¶ 5     The task force contacted an Aurora police officer, who also followed the Malibu. The officers eventually pulled over the Malibu on Downer Place in Aurora. As it turned out, the stop occurred near the home of a relative of one of the Malibu's occupants. Marcos Trujillo was driving the Malibu, Julio Flores was in the front passenger seat, and defendant was seated in the backseat on the passenger side. Defendant opened the door and started to emerge from the vehicle. Lindley observed a black plastic bag at defendant's feet. The bag was "halfway shoved, like, really tight under the front passenger's seat, and *** part of it [was] sticking out." Lindley believed that the

electrical components under the seat would have blocked the bag from being pushed "from the front passenger to the back."

¶ 6     Lindley pulled the bag out.  It contained a rectangular object, which, based on Lindley's experience, was "a compressed brick of some sort of narcotics."  The parties stipulated that the brick (1) weighed 927 grams, (2) tested positive for cocaine, and (3) "was possessed with the intent to deliver."

¶ 7     Trujillo and Flores were questioned and released from custody.  Defendant was arrested and held in the Kane County Jail.  The State introduced into evidence recordings and transcripts of two telephone conversations between Flores and defendant while he was in jail.  The first call was made on December 21, 2016.  During the conversation, Flores said he told the police that defendant and Trujillo picked him up from the mall and the three were going to Trujillo's place to "hang out."  Defendant responded, "No man you shouldn't have said that man.  *** You should've just told them I don't know anything.  They picked me up and that's it."  Defendant added, "Like I told them, they picked me up and you know what I'm saying and we just went to his house."  Flores then said, "[Trujillo] told them that we walked to your house man."  Defendant responded, "Oh my God… I told them I lived there with you man.  That's why I told you guys before you left not to say anything.  Nothing."

¶ 8     The second telephone conversation took place on December 27, 2016.  During that conversation, in an apparent reference to Trujillo, defendant stated, "Ahhh he's stupid, who does that s*** brother honestly what did I say pull on your f*** driveway[1] brother he's f*** stupid dog.  What the f***, he f*** choked, you feel me?"

---

[1]As noted, the officer stopped the Malibu near the home of a relative of one of the vehicle's

2023 IL App (2d) 210642-U

¶ 9     In its written decision finding defendant guilty, the trial court stated that defendant's mere proximity to the cocaine was insufficient to establish that defendant was in either actual or constructive possession of it.  However, the trial court noted that, in the recorded telephone conversations, defendant was

> "instructing the others in the vehicle to say nothing to police; criticizing and bemoaning the fact they told conflicting stories of what happened before the traffic stop; excoriating of one [of] the occupants for apparently cooperating with police; and directing the movements of the vehicle before the traffic stop."

¶ 10    The trial court reasoned that defendant's statements "show [him] exerting actual possession of the package [of cocaine]."  The trial court explained, "The [d]efendant exercised dominion over the package by attempting to control information about [defendant's, Flores's, and Trujillo's] activities and directing the movements of the vehicle before the stop."  The trial court also cited the recorded telephone calls in concluding that defendant intended to constructively possess the cocaine.

¶ 11    Significantly, the trial court found that "[a]ny person observing what happened[,]" namely "a meeting, a transfer of a heavily packaged object in a place chosen[,] would immediately come to the conclusion, that the package contained contraband of some kind."  The trial court also found that "[d]efendant had control over the contraband as it was at his feet."

¶ 12                                II. ANALYSIS

¶ 13    Defendant challenges the sufficiency of the evidence to sustain his conviction.  A reviewing court will not set aside a criminal conviction unless the evidence is so improbable or

_____

occupants.  Defendant might have been referring to that relative's driveway.

unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Collins*, 106 Ill. 2d 237, 261 (1985). " '[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact is responsible for resolving conflicts in the testimony, weighing the evidence, and determining what inferences to draw; a reviewing court ordinarily will not substitute its judgment on these matters for that of the trier of fact. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000).

¶ 14     Section 401 of the Illinois Controlled Substances Act (720 ILCS 570/401 (West 2016)) provides, in pertinent part, that "it is unlawful for any person knowingly to *** possess with intent to *** deliver, a controlled substance." Possession with intent to deliver 900 grams or more of a substance containing cocaine is a Class X felony punishable by a prison term of not less than 15 years and not more than 60 years. *Id.* § 401(a)(2)(d). Here, the parties stipulated that the substance exceeded 900 grams, tested positive for cocaine, and "was possessed with the intent to deliver." The only question is whether the State sufficiently proved that defendant knowingly possessed the substance.

¶ 15     Defendant argues that the State failed to prove beyond a reasonable doubt that he was in either actual or constructive possession of the cocaine discovered in the Malibu. Defendant contends that the State's evidence, including the recorded jail telephone calls, was insufficient to establish either form of possession. During the calls, defendant stated that he had told Flores and Trujillo not to talk to the police and had told Trujillo to pull into a driveway.

¶ 16     Defendant contends that "the recordings of the jail phone calls cannot be put in a context to show that [defendant] was referring to statements made *prior to his arrest* or exhibiting personal

present dominion over the cocaine." (Emphasis added.) According to defendant, "it cannot be shown whether the statements were made prior to the Malibu being stopped, outside the Malibu before its occupants were arrested, or at some later point at the Aurora Police Department before the interviews were conducted." Defendant further contends that "[t]he statements from the jail phone calls did not show when or to whom [defendant] originally said Trujillo should have pulled into a driveway."

¶ 17    Regardless of whether the recorded telephone conversations establish that defendant had *dominion* over the cocaine, the evidence was sufficient to establish defendant's *knowing possession* of the cocaine. "Possession of the controlled substance can be actual or constructive." *People v. Alexander*, 2014 IL App (2d) 120810, ¶ 36. "Actual possession is the exercise by the defendant of present personal dominion over the illicit material [citation] and exists when an individual exercises immediate and exclusive dominion or control over the illicit material [citation]." *People v. Schmalz*, 194 Ill. 2d 75, 82 (2000). In contrast, "[c]onstructive possession exists where the defendant had knowledge of the presence of the controlled substance, and had control over the area where the controlled substance was found." *Alexander*, 2014 IL App (2d) 120810, ¶ 36.

¶ 18    Defendant notes that mere proximity to contraband is not enough establish possession. In *People v. Curry*, 37 Ill. App. 3d 72, 73 (1976), when the police stopped a motor vehicle, they discovered a bag of cannabis in the backseat between the defendant and the window. The Third District held that the defendant's mere proximity to the contraband did not prove constructive possession. *Id.* at 74. The *Curry* court reasoned that "[the] defendant did not have control over the premises, the automobile." *Id.* at 73. In *People v. Blackman*, 62 Ill. App. 3d 726, 730-31 (1978), the Third District reversed two automobile passengers' convictions of possession of

cannabis, where there was no evidence that the passengers had any control over the automobile in which the cannabis was found, and the State conceded that the passengers were not in constructive possession of the cannabis. Significantly, however, the cannabis was locked in the vehicle's trunk, and only the driver had the key. *Id.*

¶ 19    In contrast to both *Curry* and *Blackman* is *People v. Ingram*, 389 Ill. App. 3d 897 (2009), cited by the State. In *Ingram*, we affirmed a motor vehicle passenger's conviction of unlawful possession of a weapon by a felon. *Id.* at 897-98. When the vehicle, a Chevy Blazer, was stopped by police, the defendant was seated in the front passenger seat. *Id.* at 898. That seat was broken and was fully reclined and lying on the backseat, where another passenger was seated. *Id.* A handgun was in plain view on the floor behind the driver's seat and was easily accessible from the reclined front passenger seat. *Id.* We noted that, to establish constructive possession, the State was required to prove "that defendant (1) had knowledge of the presence of the weapon, and (2) had immediate and exclusive control over the area where the weapon was found." *Id.* at 899-900. We concluded that there was sufficient evidence that defendant had knowledge of the handgun, because (1) it was in plain view on the floor of the backseat, (2) there was nothing else on the floor, (3) the reclined position of the defendant's seat made it visible to defendant, and (4) the defendant had been in the car for a sufficient amount of time to imply knowledge. *Id.* at 900.

¶ 20    We also concluded that the evidence was sufficient to establish control: there was testimony that "the gun was in a position where defendant easily could have reached over and placed it there." *Id.* Whereas *Curry* seems to hold that a passenger who lacks control of a motor vehicle therefore lacks constructive possession of contraband within the vehicle, our decision in *Ingram* teaches that, in motor vehicle cases, control depends on access to the contraband. Although

2023 IL App (2d) 210642-U

the defendant in *Ingram* did not have control of the vehicle itself, he had control of the *area within the vehicle* where the contraband was located.

¶ 21     Adhering to our reasoning in *Ingram*, we conclude that the evidence was sufficient to establish that defendant had knowledge of the cocaine in the Malibu and control of the area where it was found.  The evidence showed that the Malibu and the Durango rendezvoused at a parking lot in Naperville and then drove to a different location.  There the Durango's driver exited his vehicle and retrieved a bag containing a rectangular object that appeared consistent with a kilogram brick of narcotics.  The Durango's driver entered the Malibu through the rear driver's-side door and, after a few minutes, exited the Malibu without the bag.  When the officers stopped the Malibu, the bag with the rectangular object was found in the rear passenger compartment, shoved tightly under the bottom of the front passenger seat.  The object was located in front of where defendant had been sitting.  The transaction involving the two vehicles had the hallmarks of a drug deal and, as the trial court concluded, any observer would realize that the package contained contraband of some kind.  Moreover, defendant clearly had control of the area within the Malibu where the contraband was situated.

¶ 22     Defendant claims that *Ingram* is distinguishable because, there, the defendant attempted to flee from the Blazer after it was stopped, and we noted that the defendant's flight "support[ed] the inference that [the] defendant possessed the gun."  *Ingram*, 389 Ill. App. 3d at 901.  The defendant's flight was relevant because it exhibited consciousness of guilt.  *Id.* (citing *People v. Hart*, 214 Ill. 2d 490, 518-19 (2005)).  However, although the defendant's flight bolstered the State's case, we never suggested that it was essential to sustain the defendant's conviction.  In any event, even though in this case defendant did not flee, his telephone conversations with Flores, which indicate that he told Flores and Trujillo not to talk to the police, are comparable evidence of

consciousness of guilt. Although defendant contends that it is unknown when he told Flores and Trujillo not to talk to the police, we fail to see how that affects the strength of the inference.

¶ 23 We therefore conclude that the State presented sufficient evidence to prove defendant's knowledge and possession of the cocaine beyond a reasonable doubt. Because those are the only issues in dispute, we have no basis for disturbing defendant's conviction.

¶ 24                                                III. CONCLUSION

¶ 25 For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 26 Affirmed.