2021 IL App (1st) 190953-U

SIXTH DIVISION
June 11, 2021

No. 1-19-0953

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 08833 |
| | ) | |
| LAMAR STERLING, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Connors and Oden Johnson concurred in the judgment.

**O R D E R**

¶ 1     *Held*: Trial court erred in improperly relying on defendant's assertion of a constitutional right as evidence of guilt. Because the evidence at trial was sufficient to support a finding of guilt, conviction reversed and remanded for a new trial.

¶ 2     Defendant Lamar Sterling was convicted of being an armed habitual criminal following a traffic stop where police officers discovered a gun underneath the driver's seat of his car. On appeal, Mr. Sterling argues that his conviction should be reversed because the State failed to prove beyond a reasonable doubt that he possessed the gun. Mr. Sterling also argues that his counsel was

ineffective for failing to publish portions of the police officers' body camera videos entered as evidence and failing to move to redact Mr. Sterling's un-*Mirandized* statements. We find that, while the evidence against Mr. Sterling was sufficient to convict him, the trial court erred in improperly relying on Mr. Sterling's assertion of his fourth amendment rights as evidence of guilt. Accordingly, we reverse the judgment of the trial court and remand for a new trial.

¶ 3                                        I. BACKGROUND

¶ 4      Mr. Sterling's case proceeded by way of a bench trial on November 7, 2018. The arresting Chicago police officers, Hazem Sweis and Larry Vasquez, testified for the State. The following is from the officers' testimony.

¶ 5      On June 5, 2018, at around 11:13 p.m., Officer Sweis was driving an unmarked patrol car with his partner, Officer Vasquez, at the intersection of South Racine Avenue and 76th Street. The officers observed a Saturn-manufactured vehicle turn right onto South Racine from 76th Street with its high beams on, and they activated their lights to signal to the car to pull over because it was illegal to drive with high beams on. The car pulled over within roughly a half of a city block. Officer Sweis testified that just before the car came to a stop, he saw the driver's "shoulder slightly reach down[ and] move forward" and that the driver "[r]each[ed] under the seat." Officer Sweis was 20 to 25 feet behind the Saturn when he viewed this movement. Officer Vasquez similarly testified that he "observed the driver making movements." The incident report, which was not included in the record on appeal, but a portion of which was read by Officer Sweis during his cross-examination, also stated that Mr. Sterling "committed a quick, decisive movement as if he w[ere] concealing something." Officer Sweis testified that he did not include any mention of Mr. Sterling making movements in the arrest report, which was also not included in the record on appeal. According to Officer Sweis, the Saturn "slightly went over the curb, closer to the sidewalk,

2

[and] almost hit*** a pole on the sidewalk" when it pulled over.

¶ 6    Officer Sweis approached the driver-side door, while Officer Vasquez approached the passenger-side door. As Officer Sweis was asking the driver, Mr. Sterling, for his driver's license and proof of insurance, Officer Vasquez saw a gun on the floor in front of the passenger's seat, where Ashley Carter was sitting. Officer Vasquez testified that he recovered the gun, a Smith and Wesson revolver .38 special, and instructed the three individuals in the car—Mr. Sterling, Ms. Carter, and a rear passenger later identified as Lauren—to get out of the car. Officer Sweis testified that he and Officer Vasquez then detained all three occupants.

¶ 7    Following a LEADS inquiry, the officers determined that Mr. Sterling owned the car and did not have a valid Firearm Owners Identification (FOID) card or a concealed carry license. Officer Vasquez testified that he asked if anyone in the car had a concealed carry card and no one did. Ms. Carter stated that she had a FOID card. Officer Vasquez testified that, after searching the car further, he found a second gun—a fully loaded Smith and Wesson semiautomatic pistol— "immediately underneath the [driver's] seat between the cushion and the metal part" which he described as "a bracket." Officer Vasquez testified that the gun was easily accessible from the driver's seat.

¶ 8    The State entered into evidence a DVD containing 19 videos from various police body cameras and dashboard cameras. The body camera videos from Officers Sweis and Vasquez were played during trial. The State played the first 9 minutes and 59 seconds of Officer Sweis's body camera footage during his direct examination, and the record reflects that the defense played the remainder of the video, about five additional minutes, prior to the officer's cross-examination. It appears that the entirety of Officer Vazquez's body camera footage was played prior to his cross-examination. Officer Sweis's body camera video is 17 minutes and 43 seconds long, while Officer

Vazquez's body camera video is 15 minutes and 47 seconds long. Officer Vazquez finds the second gun after about 10 minutes have elapsed on both videos.

¶ 9     The body camera videos, which do not show Mr. Sterling's car until the officers have exited their vehicle, reflect the following. The officers parked roughly 10 seconds after activating their police lights. After Officer Vazquez saw the gun on the floor in front of the passenger seat, Officer Sweis directed Mr. Sterling out of his car and handcuffed him. Officer Sweis then asked Mr. Sterling, "do you have anything on you that's illegal." Mr. Sterling responded that he did not. Officer Sweis directed Mr. Sterling to sit on the curb. He then handcuffed Ms. Carter and asked her who owned the gun recovered from the floor of the car's front passenger seat. The following interaction occurred:

> "[MS. CARTER:] I got a FOID card.
>
> [OFFICER SWEIS:] You got a FOID card. Is this your gun?
>
> [MS. CARTER:] I have both guns.
>
> [OFFICER SWEIS:] Where's the other gun at?
>
> ***
>
> [MS. CARTER:] Mine should be under the seat.
>
> [OFFICER SWEIS:] Is it the one [Officer Vazquez] picked up?
>
> [MS. CARTER:] What?
>
> [OFFICER SWEIS:] Is it the one my partner picked up?
>
> [MS. CARTER:] No."

¶ 10    Officer Sweis searched the passenger seat further and asked Ms. Carter again if there was another gun in the car. She did not answer. Officer Sweis then asked if the recovered gun was hers, and she responded yes. Officer Sweis again asked if there was another gun in the car, and she

4

responded, "[n]o. That's mine," and indicated to the already recovered gun.

¶ 11     As Officer Sweis was talking with Lauren, Mr. Sterling stated, "hey, ya'll need a warrant to search in my fucking car." Officer Sweis then took Ms. Carter to the front of the car and asked her if she knew that the bright headlights were on—explaining that was the reason they had been pulled over—and also asked if the car was hers. She replied, "no that's his car." Officer Sweis then took Mr. Sterling to the side and asked him why his bright lights were on, to which Mr. Sterling responded that his car lights were automatic, and his bright lights "stay on, period." Officer Sweis informed Mr. Sterling that it was illegal to drive with the bright lights on and asked for his license. Mr. Sterling responded, "ya'll can't search my car. Ya'll can't search my car." The officers continued to search the car. Later, Officer Sweis asked Mr. Sterling if there was another gun in the car, to which he replied, "I ain't have my car all day." He also stated, "I don't know, that's what I'm telling you." Officer Vazquez's body camera footage shows that, when he actually found the second gun, he approached the door, looked under the seat for about four seconds, and then pulled out the gun saying, "I got another one right here."

¶ 12     Officer Sweis's body camera footage showed that, after Ms. Carter and Mr. Sterling were placed in police cars, Lauren asked Officer Sweis to get Ms. Carter's money out of the glove compartment of the car. Officer Sweis asked Ms. Carter if her money was in the glove compartment, and she said yes. Officer Sweis retrieved the cash from the glove compartment and Lauren counted it in front of Ms. Carter. It totaled $540. Ms. Carter asked the officer to give the money to Lauren, which he did.

¶ 13     The Stated entered two certified copies of Mr. Sterling's prior convictions for vehicular hijacking under Case Nos. 09 CR 14325 and 09 CR 14326 and certified vehicle records showing

that Mr. Sterling was the owner of the Saturn. The State then rested.

¶ 14    Mr. Sterling moved for a directed finding, which the court denied. The defense then rested.

¶ 15    On November 8, 2018, the court found Mr. Sterling guilty of two counts of unlawful possession of a weapon by a felon and one count of being an armed habitual criminal, with the unlawful possession of a weapon counts merging into the armed habitual criminal count. In reaching its finding, the court reasoned that, even though Ms. Carter makes the initial comment that "both guns" are hers, the court "d[id]n't believe she meant that." The court placed emphasis on the fact that the "entire time [the officers were searching the car], which is certainly within his right but I think it's incriminating to some extent or another, [Mr.] Sterling ke[pt] saying, you can't search the car, he can't search the car—whatever words to that effect—trying to avoid police searching the car." The court noted that, even if that gun was indeed Ms. Carter's, Mr. Sterling was constructively possessing it at the time. The court explained, "[t]he gun is found underneath the seat where he was sitting at. He makes that *** decisive movement *** towards the seat where the gun is at, where the police find the gun." According to the trial court, that, in addition to the evidence that he "sort of dr[o]ve[] up on the sidewalk a little bit" as well as "this conversation afterwards—you can't search the car, you can't search the car—because he knows if they search the car, they'll find something bad for [him]" was sufficient to find him guilty beyond a reasonable doubt. The court also determined that the portion of the video referring to Ms. Carter's money in the glove compartment, which the court was "not sure" it heard, was "completely irrelevant altogether." And that, "[a]ll we need to say about that is, basically, so what."

¶ 16    Mr. Sterling filed a motion to reconsider the finding of guilt or, in the alternative, a motion for a new trial arguing that the State failed to prove him guilty beyond a reasonable doubt and that the officers' testimony as to any furtive movements was not credible. On April 18, 2019, the court

denied Mr. Sterling's posttrial motion, again relying in part on Mr. Sterling's statements that the officers could not search his car, reasoning these statements were made "not so much to protect his constitutional rights *** [but] to avoid [the officers] searching the car." The court then sentenced Mr. Sterling to eight years in prison. Mr. Sterling's motion to reconsider his sentence was also denied.

¶ 17                                II. JURISDICTION

¶ 18    A final judgment was entered on April 18, 2019, and Mr. Sterling filed his timely notice of appeal that same day. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. July 1, 2017), governing appeals from final judgments of conviction in criminal cases.

¶ 19                                III. ANALYSIS

¶ 20    On appeal, Mr. Sterling argues that the State failed to prove him guilty of being an armed habitual criminal beyond a reasonable doubt. He also argues that his counsel was ineffective for failing to publish portions of the police officers' body camera videos and failing to move to redact Mr. Sterling's un-*Mirandized* statements. As explained below, we find that the court impermissibly relied on evidence of Mr. Sterling's assertion of his constitutional rights in finding Mr. Sterling guilty. If, as Mr. Sterling argues on appeal, the evidence was insufficient to sustain his conviction, we would have to reverse outright, as a retrial would be barred by double jeopardy. *People v. Olivera*, 164 Ill. 2d 382, 393 (1995). However, because we find the evidence sufficient, we reverse this conviction and remand for a new trial. *Id.* This makes it unnecessary for us to reach Mr. Sterling's claim that his lawyer was ineffective.

¶ 21    Under the due process clause of the fourteenth amendment to the United States Constitution, "a person may not be convicted in state court 'except upon proof beyond a reasonable

7

doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). When a criminal conviction is challenged based on insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* As such, a criminal conviction will only be reversed "where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *People v. Brown*, 2013 IL 114196, ¶ 48. Testimony will only be deemed insufficient under the *Jackson* standard "where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt." *Cunningham*, 212 Ill. 2d at 280.

¶ 22    Mr. Sterling's armed habitual criminal charge required the State to prove beyond a reasonable doubt that he "possesse[d] *** any firearm after having been convicted a total of 2 or more times of any combination" of enumerated offenses, including vehicular hijacking. 720 ILCS 5/24-1.7(a)(2) (West 2018). On appeal, Mr. Sterling argues that the State failed to prove beyond a reasonable doubt that he possessed the gun found in the driver's seat where the video evidence belied the officers' testimony that Mr. Sterling made any movements indicating he hid the gun, Ms. Carter admitted both guns were hers, and nothing but the gun's location linked it to Mr. Sterling. Mr. Sterling also argues that the court impermissibly relied on his statements that the officers could not search his car and needed a warrant to search his car.

¶ 23    Possession may be actual or constructive. *People v. Jones*, 2019 IL App (1st) 170478, ¶ 27.

To prove constructive possession the State must demonstrate that the defendant (1) had knowledge of the presence of the weapon and (2) exercised immediate and exclusive control over the area where the weapon was found. *People v. Grant*, 339 Ill. App. 3d 792, 798 (2003). Both knowledge and control may be demonstrated through circumstantial evidence. *People v. McCurine*, 2019 IL App (1st) 160817, ¶ 22.

¶ 24    Regarding the first element, courts have found that several factors give rise to a reasonable inference that a defendant had knowledge of the presence of a weapon in a vehicle, including:

> "(1) the visibility of the weapon from [the] defendant's location in the vehicle, (2) the amount of time in which [the] defendant had an opportunity to observe the weapon, (3) gestures or movements made by [the] defendant that would suggest an effort to retrieve or conceal the weapon, and (4) the size of the weapon." *People v. Ingram*, 389 Ill. App. 3d 897, 900 (2009).

"Courts should also consider any other relevant circumstantial evidence of knowledge, including whether the defendant had a possessory or ownership interest in the weapon or in the automobile in which the weapon was found." *People v. Bailey*, 33 Ill. App. 3d 888, 892 (2002).

¶ 25    The State's evidence that Mr. Sterling made "movements" suggesting an effort to conceal an object came entirely through the testimony of Officers Sweis and Vazquez. Mr. Sterling argues that the officers' testimony as to these gestures is not credible because there is no reference to them in any of the body camera footage, there was not enough time to hide the gun and retrieve his ID, the real reason that they were even looking for a second gun was Ms. Carter's reference to "both" guns, and it would have been difficult to see the movements the officers claimed that they saw Mr. Sterling make because there was little time, it was night, and Lauren, who sat in the backseat, would likely have blocked their view of Mr. Sterling.

9

¶ 26    We do not substitute our judgment for that of the trier of fact on issues of witness credibility. *People v. Cooper*, 194 Ill. 2d 419, 431 (2000). However, our supreme court has also stated that such credibility determinations are "not conclusive," and "where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt" the judgment will be reversed. *Brown*, 2013 IL 114196, ¶ 48.

¶ 27    It is true that, in the more than fifteen minutes of Officer Sweis's and Officer Vazquez's body camera footage, the officers never once mention Mr. Sterling's movements—not when they approach the car, not when they find the first gun, not when they suspect and search for a second gun, and not when they finally locate the second gun in the very spot they later allege he appeared to conceal something. These movements, which the court characterized as "furtive," were also not mentioned in Officer Sweis's arrest report. The body camera videos make clear that the officers were focused on Ms. Carter's statement that "both guns" were hers and that "the other gun" was "under the seat." And they searched around her seat extensively before moving to other areas of the car. The officers' actions and statements in the video footage certainly undercut their testimony at trial that they observed Mr. Sterling making movements before they stopped the car.

¶ 28    The other factual issues Mr. Sterling points out, however, are less compelling. Based on this court's own review of the video footage, 10 seconds elapsed between the officers activating their police lights and parking their car. We cannot say that no reasonable factfinder could conclude that Mr. Sterling would be able to hide a gun between his seat cushion and the metal bracket in that amount of time. Indeed, the video reflects that it took Officer Vasquez only about four seconds to retrieve the gun once he was focused on the area where it was located. And an additional 13 seconds passed between when Officer Sweis parked his car and when he reached Mr. Sterling's door, during which Mr. Sterling could have been retrieving his ID. There is also no indication in

the videos—though Mr. Sterling argues Lauren's size, in general, demonstrates this—that Lauren would have obstructed the officers' view.

¶ 29    In addition, the trial court said that it viewed Mr. Sterling's comments to the officers that they needed a warrant to search his car and were not allowed to search his car as incriminating. While, as we discuss below, we find this inference impermissible—and we might also question how probative it really was—we cannot say no rational person would have found it to be relevant.

¶ 30    Mr. Sterling argues that "the gun was so deeply hidden that even after [Ms.] Carter told Officer Sweis that her second gun was 'under the seat,' it took a team of officers, kneeling beside the seat with flashlights, more than seven minutes to finally find it." However, the body camera footage does not show that the officers were constantly searching the car during those seven minutes, and, when they were searching the car, they were not searching exclusively under Mr. Sterling's seat. As noted above, Officer Vasquez's body camera footage shows that, once he looked under the seat, it took him only four seconds to find the gun.

¶ 31    Mr. Sterling also contends the evidence was not sufficient because Ms. Carter stated "both guns" were hers, the video footage showed that Ms. Carter was familiar with how the lights operated in the car, and she had stored $540 in the glove compartment. As the trial court noted, Ms. Carter was certainly not consistent in her statements as to which guns she owned, later telling the officers that only the first gun was hers. And, even if Ms. Carter owned the second gun, Mr. Sterling could still have constructively possessed it, as ownership of the gun is not a required element. See *Id.* ("It is unnecessary to prove a defendant's ownership of a contraband article or the ownership of the place where it is kept in order to establish constructive possession."). The evidence that Ms. Carter was familiar with the car and stowed money in the glove compartment may have been consistent with Mr. Sterling's argument that she could have put the second gun in

11

the driver's seat without Mr. Sterling's knowledge, but it does not compel that conclusion.

¶ 32    Ultimately, reviewing all of the evidence, we cannot say that "no reasonable person" could accept it as proof beyond a reasonable doubt. *Cunningham*, 212 Ill. 2d at 280.

¶ 33    Mr. Sterling asks us to compare this case to *People v. Smith*, 2020 IL App (3d) 160454, in support of his argument that the State did not demonstrate knowledge sufficient to support a finding of constructive possession. In *Smith*, this court found the defendant's knowledge of the presence of a gun in his car could be inferred where the gun was a large shotgun that was too big to be concealed in the car, the gun was stored in an open-ended bag, and the defendant was on a road trip with his brother and would have loaded and unload the car multiple times. *Id.* ¶ 38. Here, as Mr. Sterling points out, there is no indication that the gun was stored in the open, it was obviously much smaller than the shotgun in *Smith*, it was concealed under a seat, and there was no evidence of repeated loading and unloading of the car. However, those are just *some* factors from which the trier of fact may infer knowledge. The factors at play here are quite different. In this case the trial court found that there was evidence of "gestures or movements made by defendant that would suggest an effort to retrieve or conceal the weapon." *Ingram*, 389 Ill. App. 3d at 900. In addition, this was Mr. Sterling's car. See *Bailey*, 33 Ill. App. 3d at 892 (stating ownership of the car where the gun is found is "relevant circumstantial evidence of knowledge"). Based on these factors, rather than the gun's size and visibility, the trial court was permitted to infer Mr. Sterling's knowledge of the gun.

¶ 34    The evidence was also sufficient for the trial court to find that Mr. Sterling had control over the gun. Officer Vasquez testified that the gun was easily reachable from Mr. Sterling's driver's seat and there was no evidence to the contrary. See *People v. O'Neal*, 35 Ill. App. 3d 89, 91 (1975) (contraband is "sufficiently accessible" for the purposes of control if it is "within [the defendant's]

easy reach").

¶ 35    However, although we find the evidence sufficient, we agree with Mr. Sterling that his assertion of his fourth amendment rights was improperly considered as evidence of his guilt. Specifically, we find that the court's reliance on such statements was a violation of due process and therefore constituted plain error. We note that this assertion of rights occurred in the context of a traffic stop for something as relatively minor as having high beam headlights on. Mr. Sterling did not brief this issue as a matter of plain error, but rather as a sufficiency issue, so we must first consider whether we may reverse on this basis.

¶ 36    "Illinois law is well settled that other than for assessing subject matter jurisdiction, 'a reviewing court should not normally search the record for unargued and unbriefed reasons to *reverse* a trial court judgment.' " (Emphasis in original.) *People v. Givens*, 237 Ill. 2d 311, 323 (2010). This court does have the power, however, to resolve a case based on an unbriefed issue under Supreme Court Rule 366(a)(5) (eff. Feb. 1, 1994). That rule expressly allows this court to "enter any judgment and make any order that ought to have been given or made, and make any other and further orders and grant any relief *** that the case may require." However, this court will rely on this power and reverse for a reason that the parties have not requested only where the trial court committed an "obvious error." *Givens*, 237 Ill. 2d 311 at 328 (citing *People v. Rodriguez*, 336 Ill. App. 3d 1, 12 (2002)). As we noted in *Rodriguez,* this court must "refrain" from exercising this power where it "would have the effect of transforming this court's role from that of jurist to advocate." *Rodriguez*, 336 Ill. App. 3d at 14. As we further explained, addressing an unbriefed issue could force the court "to speculate as to the arguments that the parties might have presented had these issues been properly raised before this court," and "[t]o engage in such speculation would only cause further injustice." *Id.* Here, we choose to exercise our power under Rule 366(a)(5)

because the error is clear and was both briefed by the parties and discussed at oral argument, albeit as part of Mr. Sterling's sufficiency argument. This discussion diminishes the concerns described in *Rodriguez*. Having considered those arguments and the authorities presented, it is clear to us that the trial court's reliance on Mr. Sterling's assertion of what he believed were his fourth amendment rights was improper.

¶ 37    The United States Supreme Court has repeatedly held that the government may not use a defendant's assertion of his fifth amendment rights as evidence of guilt. See *Doyle v. Ohio*, 426 U.S. 610, 618 (1976) (finding that it would be "fundamentally unfair and a deprivation of due process to allow" the government to use post-arrest silence to impeach a theory of defense later testified to at trial); *Griffin v. California*, 380 U.S. 609, 615 (1965) (finding that the fifth amendment "forbids either comment by the prosecution on the accused's [decision to not testify at trial] or instructions by the court that such silence is evidence of guilt"); see also Ill. Sup Ct. R. 431(b) (eff. July 1, 2012) ("The court shall ask each potential juror *** whether that juror understands and accepts *** that if a defendant does not testify it cannot be held against him or her.").

¶ 38    The principles underlying the protections afforded defendants asserting fifth amendment rights have also been applied to defendants in the context of the fourth amendment. This court has made it clear that "[t]he State may not introduce evidence that the accused exercised his constitutional right to be free from unreasonable searches and seizures, because the prejudicial effect substantially outweighs the probative value of allowing the jury to infer the accused's consciousness of guilt from his exercise of his rights." *People v. Ealy*, 2015 IL App (2d) 131106, ¶ 51. In *U.S. v. Moreno*, the Seventh Circuit noted that, "[i]n reliance on *Griffin* and *Doyle*, other courts have either held or suggested that the government may not cite a defendant's refusal to

consent to a search of his home as evidence that he knew the search would produce incriminating evidence." *U.S. v. Moreno*, 233 F. 3d 937, 941 (2000) (citing *United States v. Dozal*, 173 F.3d 787, 794 (10th Cir.1999); *United States v. Thame*, 846 F.2d 200, 206-07 (3d Cir.), *cert. denied*, 488 U.S. 928 (1988); *United States v. Prescott*, 581 F.2d at 1350-52; *United States v. Taxe*, 540 F.2d 961, 969 (9th Cir.1976), *cert. denied*, 429 U.S. 1040 (1977); *United States v. Turner*, 39 M.J. 259, 262 (C.M.A. 1994); *State v. Palenkas*, 188 Ariz. 201, 933 P.2d 1269 (1996), *cert. denied*, 521 U.S. 1120 (1997); *State v. Jennings*, 333 N.C. 579, 430 S.E.2d 188, 200 (1993), *cert. denied*, 510 U.S. 1028 (1993); *Simmons v. State*, 308 S.C. 481, 419 S.E.2d 225, 226-27 (1992)). We agree with the application of these principles here. If a defendant cannot assert his fourth amendment rights without fear of incriminating himself in the process, the utility and meaning of this constitutional protection is severely diminished.

¶ 39    The State responds that "[c]overing up crime or deflecting an investigation is evidence of consciousness of guilt," (*People v. Milka*, 211 Ill. 2d 150, 181 (2004)) implying that Mr. Sterling, in attempting to exercise his constitutional rights, was deflecting an investigation. But in *Mikla*, the defendant lied to the police about where he was during the crime. *Id.* And it is in that context that our supreme court held, "[a] false exculpatory statement is probative of a defendant's consciousness of guilt." (Internal quotation marks omitted.) *Id.* Mr. Sterling's statement that the police could not search his car or needed a warrant to search his car is not akin to a false exculpatory statement and it was error to use it as a basis for his conviction.

¶ 40    A trial court's reliance on a defendant's assertion of his fourth amendment rights as evidence of guilt may be harmless, as the courts found in *Ealy* and *Moreno*. *Ealy*, 2015 IL App (2d) 131106, ¶ 86; *Moreno*, 233 F. 3d at 941. However, in this case the court expressly relied on Mr. Sterling's statement that the police could not search his car when it found him guilty. In its

ruling, the court stated that, during the "entire time" of the stop, "[Mr.] Sterling ke[pt] saying, you can't search the car, he can't search the car—whatever words to that effect—trying to avoid police searching the car." The court then disregarded Ms. Carter's statement that "both guns" were hers by reasoning:

> "[I]t d[id no]t matter under these circumstances overall because the furtive movement, decisive, quick movement, the gun found in the car owned by [Mr.] Sterling, the place he's sitting at when he moves towards the car after the car sort of drives up on the sidewalk a little bit. And, also, this conversation afterwards—you can't search the car, you can't search the car—because he knows if they search the car, they'll find something bad for [Mr.] Sterling, which they actually did."

In denying the motion to reconsider the finding of guilt, the court again focused on Mr. Sterling's statements:

> "Before they even find [the gun], he's making these comments. You can't search the car, you can't search the car. That was his viewpoint.
>
> ***
>
> He's making those comments for, in my opinion, not so much to protect his constitutional rights. It's to avoid them searching the car. You can't search the car. Why not? Because if you do search, you'll find that second gun where I'm sitting at, where I put the gun at.
>
> If you search the car, you're going to find it. So don't search the car."

¶ 41   Further, the evidence in Mr. Sterling's case—while sufficient—was not overwhelming. In addition to the inference of guilt from Mr. Sterling's protestations, the court appeared to rely most heavily on the officers' testimony as to what the court characterized as Mr. Sterling's "furtive"

16

movements, as he pulled over his car. Yet, as we noted above, the officers' testimony about those movements was undermined by the fact that they were never mentioned in the roughly 15 minutes of video in which the officers interacted with Mr. Sterling and the other occupants of the car both before and after finding the second gun. In this case we cannot find that the trial court's reliance on Mr. Sterling's assertion of fourth amendment rights did not contribute to the court's finding of guilt.

¶ 42    Retrial is the proper remedy where the evidence presented at the initial trial, including any improperly admitted evidence, was sufficient to sustain the conviction, but where the conviction is nevertheless overturned because of an error in the trial proceedings. *People v. King*, 2020 IL 123926, ¶ 52. We reverse and remand for a trial.

¶ 43                                   IV. CONCLUSION

¶ 44    For the foregoing reasons, we reverse the judgment of the trial court.

¶ 45    Reversed and remanded.