2023 IL App (1st) 220959-U

FIRST DISTRICT,
FIRST DIVISION
November 27, 2023

No. 1-22-0959

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 18 CR 08079 |
| | ) | |
| JAMES ROBINSON, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE COGHLAN delivered the judgment of the court.
Justices Lavin and Pucinski concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's convictions for unlawful use of a weapon by a felon is affirmed where the evidence was sufficient to support the conviction and Section 24-1.1 of the Criminal Code of 2012 is constitutional under both the United States and Illinois Constitutions.

¶ 2     Following a bench trial, defendant James Robinson was convicted of unlawful use or possession of a weapon by a felon (UUWF) and possession of a controlled substance (PCS). The trial court sentenced him to concurrent terms of nine years' imprisonment for UUWF and 14 months imprisonment for PCS. On appeal, defendant argues that the State failed to prove him guilty beyond a reasonable doubt of UUWF and that the UUWF statute is an unconstitutional violation of his rights under the Second Amendment and the Illinois Constitution. For the

following reasons, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On March 23, 2021, defendant was arrested after police officers observed the car he was driving run a red light, almost hit another vehicle, and come to a stop on top of the curb. Defendant exited the driver's side of the car and fled on foot. While one officer chased defendant, another officer recovered a loaded handgun from between the driver's seat and the center console.

¶ 5        On April 29, 2021, defendant was charged by indictment with possession of a controlled substance with intent to deliver, two counts of aggravated unlawful use of a weapon (AUUW), and UUWF for possession of a gun "after having been previously convicted of the felony offense of [UUWF] under case number 15 CR 1610001." The State dismissed the AUUW counts at trial.

¶ 6                                    A. Bench Trial

¶ 7        Chicago Police Officer Jamel Pankey testified that he and his partner, Officer Demetrius Prothro, were on duty around 9:46 p.m. on March 23, 2021. The officers were assigned "to go to the local gas stations for community interactions" to "let [drivers] know that it's not good to have your car running while at the gas station" because of recent carjackings.

¶ 8        At a gas station near 7600 South State Street, Pankey saw a "dark" colored Chevy Malibu with tinted windows and the engine running. Pankey "looked in the direction" of the Malibu and observed defendant in the driver's seat. The car "immediately" drove off, ran through a red light, "almost hit another vehicle," and came to a stop on the curb. Defendant fled from the vehicle on foot and Prothro chased him while Pankey stayed with the car. The front seat passenger got out of the car and "immediately went to the ground."

¶ 9        Pankey detained the passenger and performed a "protective pat-down" to check for weapons. He then made a "visual inspection of the vehicle" and observed "Promethazine" bottles "[i]n plain view on the front driver floorboard." Pankey searched the car and recovered the bottles

and a loaded Glock 22 semiautomatic handgun from between the front center console and the driver's seat. He also recovered approximately $11,000 in cash from the center console.

¶ 10    Pankey's body-worn camera recorded part of the incident, and the audio and video from the camera was admitted into evidence. Pankey explained that defendant had fled from the vehicle before the video started. As Pankey approaches the car, the passenger lies on the ground next to the car. Pankey handcuffs the passenger and then shines a light in the open passenger door. After patting down the passenger, Pankey opens the rear passenger side door and shines a light inside. Pankey opens the driver's door and brown bottles are visible on the floor. Pankey leans inside the car and shines a light at the center console and side of the driver's seat. A handgun is visibly protruding from between the driver's seat and center console and Pankey recovers the weapon.

¶ 11    Prothro eventually placed defendant into custody "a few blocks away." A custodial search of defendant did not reveal any narcotics, material for packaging narcotics, or ammunition. Defendant and the passenger were transported to the police station. The parties stipulated that the Chevy Malibu was not registered to defendant and that the recovered Promethazine bottles tested positive for codeine, a controlled substance. The parties also stipulated that defendant had previously been convicted of "a qualifying felony offense" and that his driver's license was revoked at the time of the March 23, 2021, incident.

¶ 12    Defendant moved for directed finding and counsel argued that the State did not prove "both exclusive control over the area where the contraband was located and *** knowledge" because the passenger "certainly would have had the opportunity to discard any contraband that he may have had" and "the weapon was accessible to where that passenger was."

¶ 13    The trial court found defendant guilty of UUWF. The court also found defendant not guilty of possession of a controlled substance with intent to deliver, but guilty of the lesser-included offense of PCS. Regarding UUWF, the court found:

"Now to look at the search, there wasn't actual possession. Was there constructive possession? It has to be because Mr. Robinson had left the car when the gun was seized. The gun was seized in between the driver's seat and the console. Certainly there was *** sufficient evidence that it was within reaching distance of Mr. Robinson."

¶ 14 Defendant's motion for new trial was denied. Defendant's presentence investigation (PSI) detailed felony convictions in 2012 for reckless discharge of a firearm, 2013 for identity theft, and 2015 for UUWF. The trial court sentenced defendant to concurrent terms of nine years' imprisonment for UUWF and 14 months' imprisonment for PCS.

¶ 15           II. ANALYSIS

¶ 16        A. Sufficiency of the Evidence

¶ 17 Defendant first contends that the State failed to prove him guilty beyond a reasonable doubt of UUWF because the State failed to prove that he "had either exclusive control over the gun or knowledge the gun was in the car."

¶ 18 In reviewing the sufficiency of the evidence, "the question is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In a bench trial, the trial court is responsible for determining the credibility of the witnesses, weighing the evidence, resolving conflicts in the evidence, and drawing reasonable inferences therefrom. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). In weighing the evidence, the trial court is not required to disregard the inferences that flow naturally from that evidence, nor is it required to search for any possible explanation consistent with innocence and raise it to the level of reasonable doubt. *People v. Jackson*, 232 Ill. 2d 246, 281 (2009). This court will not retry the defendant nor substitute its judgment for that of the trier of fact on the weight of the evidence or credibility of

witnesses. *People v. Brown*, 2013 IL 114196, ¶ 48. "We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt." *People v. Collins*, 214 Ill. 2d 206, 217 (2005).

¶ 19    To prove defendant guilty of UUWF as charged in this case, the State was required to show that he knowingly possessed on or about his person any firearm after having been previously convicted of the offense of UUWF. 720 ILCS 5/24-1.1(a) (West 2020). Defendant does not challenge the proof of his prior conviction, to which he stipulated at trial. Thus, the only element in dispute is whether defendant knowingly possessed a firearm.

¶ 20    Possession of a firearm may be either actual or constructive. *People v. Jones*, 2023 IL 127810, ¶ 30. Where, as here, the firearm was not found on defendant's person, the State had to prove he had constructive possession of the firearm. *Id*. Constructive possession exists where a defendant had knowledge of the presence of the firearm and exercised immediate and exclusive control over the location where the weapon was found. *Id*.

¶ 21    Whether defendant knowingly possessed the firearm and had control over its location are questions for the trier of fact. *Id.* ¶ 27. Constructive possession may be inferred from the evidence and is " 'often entirely circumstantial.' " *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003) (quoting *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002)). The trier of fact is entitled to rely on reasonable inferences of knowledge and possession, absent other factors that might raise a reasonable doubt of defendant's guilt. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17.

¶ 22    A defendant's mere presence in a vehicle, without more, does not establish his knowledge of a weapon therein. *People v. Bailey*, 333 Ill. App. 3d 888, 891 (2002). Knowledge may be demonstrated by evidence of a defendant's acts or conduct from which one can infer that he knew the contraband existed in the place it was found. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. Knowledge may be inferred from several factors, including: "(1) the visibility of the weapon from

defendant's location in the vehicle, (2) the amount of time in which defendant had an opportunity to observe the weapon, (3) gestures or movements made by defendant that would suggest an effort to retrieve or conceal the weapon, and (4) the size of the weapon." *People v. Ingram*, 389 Ill. App. 3d 897, 900 (2009).

¶ 23　　　Control is established when a defendant has the capability and the intent to maintain dominion and control over the firearm. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. Proof that a defendant had control over the location where the firearm was found gives rise to an inference of his knowledge and possession of that weapon. *Jones*, 2023 IL 127810, ¶ 30. The defendant's proximity to the firearm is another factor courts have found relevant in determining whether the defendant had constructive possession of a firearm. *People v. Wise*, 2021 IL 125392, ¶ 29. The fact that other people may have also had access to the firearm does not diminish a defendant's control. *People v. Givens*, 237 Ill. 2d 311, 338 (2010).

¶ 24　　　Here, when viewed in the light most favorable to the State, the evidence was sufficient for the trial court to find that defendant had constructive possession of the firearm.

¶ 25　　　The evidence of defendant's knowledge went beyond his mere presence in the car. First, it is apparent from the body-worn camera that the handgun was visibly protruding from between the driver's seat and center console when Officer Pankey shined a flashlight into the vehicle. Second, defendant had not just entered the car, but had been in the driver's seat long enough to move the car from its parked position at the gas station, run a red light, "almost hit another vehicle," and come to a stop on the curb. See *Ingram*, 389 Ill. App. 3d at 900 ("[D]efendant had not just entered the car but had been in the car for a sufficient period of time to imply knowledge"). Finally, the size of the gun made it easily identifiable as a handgun. See *id.*

¶ 26　　　While there was no evidence that defendant made furtive "gestures or movements," defendant's other conduct supports the inference of knowledge. *Id.* It is well-settled that a fact-

finder may consider evidence of flight "as tending to demonstrate a defendant's consciousness of guilt." *People v. Moore*, 2015 IL App (1st) 1400051, ¶ 26; see also *Spencer*, 2012 IL App (1st) 102094, ¶ 18 (the defendant's attempt to flee from a room suggested that he knew about the firearm in the room). Although defendant put forth an alternative explanation for his flight—his driver's license had been revoked— it is for the court as trier of fact "to resolve any inconsistencies in the testimony" and "the trier of fact is free to accept or reject as much or as little" of the testimony as it pleases. *People v. Logan*, 352 Ill. App. 3d 73, 80-81 (2004).

¶ 27    As to control, the video from Pankey's body-worn camera corroborates his testimony that the handgun was found between "the front console and the front driver's seat," within easy reach of defendant. See *People v. O'Neal*, 35 Ill. App. 3d 89, 91 (1975) (contraband may be considered under the defendant's immediate control if it is within his easy reach). Defendant's assertion that the evidence did not show he had control over the firearm where he was not the registered owner of the car is unavailing. "It is control of a vehicle where [contraband is] found, rather than ownership, which is pertinent to proving exclusive control of the area." *People v. Robinson*, 233 Ill. App. 3d 278, 287 (1992); see also *People v. Janis*, 56 Ill. App. 3d 160, 163 (1977) (facts supporting a finding of control over the vehicle for purposes of constructive possession included that defendant was in driver's seat, gave police reason to approach the vehicle, and claimed vehicle was borrowed from another).

¶ 28    In addition, it is of no import that there was no physical evidence, such as fingerprints, linking defendant to the firearm. It is well-established that the testimony of a single witness, if positive and credible, is sufficient to sustain a conviction. *People v. Gray*, 2017 IL 120958, ¶ 36. This court has repeatedly found that where a witness's testimony is credible, the State is not required to present additional physical evidence to link a defendant to a firearm. *People v. Campbell*, 2019 IL App (1st) 161640, ¶ 33. Here, the trial court clearly found Pankey's testimony

credible and, therefore, it was not necessary for the State to present any physical or forensic evidence linking defendant to the firearm.

¶ 29    Taken in the light most favorable to the State, the evidence was sufficient to establish that defendant had constructive possession of the weapon and sustain his conviction for UUWF.

¶ 30                                B. Second Amendment

¶ 31    Defendant argues, for the first time on appeal, that the UUWF statute violates the second amendment on its face and as applied to him in light of the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. ___, 142 S. Ct. 2111, 2122 (2022). While a facial challenge alleges that the statute is unconstitutional under *any* set of facts, an as-applied challenge alleges only that the statute violates the constitution as applied to the particular facts and circumstances in the instant case. *People v. Thompson*, 2015 IL 118151, ¶ 36. There is a strong presumption that a statute is constitutional, and the burden is on the party challenging the statute "to clearly establish any constitutional invalidity." *Allegis Realty Investors v. Novak*, 223 Ill. 2d 318, 334 (2006). We review *de novo* whether a statute is constitutional. *Id.*

¶ 32                                1. Facial Challenge

¶ 33    Defendant first argues that the unlawful possession of a weapon by a felon statute violates the second amendment on its face. Specifically, defendant argues that the statute applies to any felon "regardless of the nature of the previous felony conviction and regardless of whether the present offense was committed in a dangerous or violent manner." The State disagrees.

¶ 34    "A facial challenge to the constitutionality of a statute is the most difficult challenge to mount." *People v. Davis*, 2014 IL 115595, ¶ 25. Our supreme court has explained the review of a facial challenge as follows:

> "A party raising a facial challenge to a statute faces a particularly heavy burden. [Citation.]
>
> A statute will be deemed facially unconstitutional only if there is no set of circumstances

under which the statute would be valid. [Citation.] The particular facts related to the challenging party are irrelevant. [Citation.] If it is reasonably possible to construe the statute in a way that preserves its constitutionality, we must do so." *People v. Bochenek*, 2021 IL 125889, ¶ 10.

Accordingly, "a facial challenge must fail if *any* situation exists where the statute could be validly applied." (Emphasis added) *Davis*, 2014 IL 115595, ¶ 25.

¶ 35    The second amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. "Throughout the twentieth century the prevailing understanding of the second amendment, at least in some way, related to militia service." *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 66 (citing *United States v. Miller*, 307 U.S. 174, 179 (1939)). This changed in 2008 with the United States Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008). *Heller* interpreted the second amendment as establishing an individual right and identified the "core" of the second amendment as "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 635. Two years later, in *McDonald v. City of Chicago*, 561 U.S. 742 (2010), the Court extended the second amendment's individual right to keep and bear arms to the states under the fourteenth amendment. The Court reiterated, "We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons *** We repeat those assurances here." *Id.* at 786.

¶ 36    Following *Heller* and *McDonald*, "[e]very circuit court" in the country developed the "same two-step test" for evaluating second amendment challenges to gun regulations. *Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023) (citing *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2126-27); see also *Kanter v. Barr*, 919 F.3d 437, 441 (7th Cir. 2019), *abrogated by Bruen*, 597 U.S. ___, 142 S. Ct. 2111. "At the first step, the government could defend the challenged restriction by

showing that the regulated activity fell outside the scope of the Second Amendment as originally understood." *Atkinson*, 70 F.4th at 1020. "If history proved inconclusive or suggested that the regulated activity was not 'categorically unprotected,' " then courts proceeded to the second step— conducting a means-end analysis, "weighing the severity of the regulation against the ends the government sought to achieve." *Id.* (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 703 (7th Cir. 2011)).

¶ 37     Recently, however, in *Bruen*, the United States Supreme Court rejected the two-step approach as "one-step too many" and condemned any means-end analysis in the second amendment context. *Bruen*, 597 U.S. at ___, 142 S. Ct. at 2127, 2131. The Supreme Court reviewed a challenge to a New York licensing regime that regulated gun possession and carry. *Id.*, 597 U.S. at ___, 142 S. Ct. at 2122. Persons wishing to possess a firearm *at home* were required to convince a licensing officer that they were of good moral character and did not have a history of crime or mental disease and that no good cause for denial existed. *Id.*, 597 U.S. at ___, 142 S. Ct. at 2122-23. However, persons wishing to carry a firearm *outside* the home had to show "proper cause" to be issued a license. *Id.*, 597 U.S. at ___, 142 S. Ct. at 2123. This meant that people had to "demonstrate a special need for self-protection distinguishable from that of the general community." *Id.*, 597 U.S. at ___, 142 S. Ct. at 2123.

¶ 38     The Supreme Court explained that, under a new analytical framework for evaluating the constitutionality of firearm regulations, courts first needed to determine whether "the Second Amendment's plain text covers an individual's conduct." *Id.*, 597 U.S. at ___, 142 S. Ct. at 2129-30. If it does, then "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*, 597 U.S. ___, 142 S. Ct. at 2126. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." (Internal quotation marks omitted.). *Id.*, 597 U.S. at ___, 142 S. Ct. at

2130. The Supreme Court ultimately held that the proper cause requirement of New York's carry regulation violated the constitutional right to keep and bear arms, and struck down the licensing scheme. *Id.*, 597 U.S. ___, 142 S. Ct. at 2122, 2156.

¶ 39　　　　The Supreme Court reiterated that the second amendment does not grant an unrestricted right to carry firearms by all people at all times, explaining:

> "The Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions. *Heller*, 554 U.S. at 581. Those restrictions, for example, limited the intent for which one could carry arms, the manner by which one carried arms, or the exceptional circumstances under which one could not carry arms, such as before justices of the peace and other government officials."
> *Id.*, 597 U.S. ___, 142 S. Ct. at 2156.

¶ 40　　　　In *Heller*, *McDonald*, and *Bruen*, the Supreme Court made clear that felons are not, and have historically not been, categorically protected by the second amendment as "law-abiding citizens." *Bruen*, 597 U.S. ___, 142 S. Ct. at 2122. Defendant has failed to demonstrate that there is "no set of circumstances under which the statute would be valid" (*Bochenek*, 2021 IL 125889, ¶ 10) and his facial challenge to the UUWF statute fails.

¶ 41　　　　　　　　　　　　2. As-Applied Challenge

¶ 42　　　　Defendant also argues that the UUWF statute is unconstitutional as applied to him because he was "not under a felony sentence or on mandatory supervised release at the time he committed the present offense" and was not "dangerous at the time of his arrest." The State responds that defendant has forfeited this challenge and, regardless, *Bruen* does not "cast doubt on Illinois' prohibition against convicted felons possessing firearms."

¶ 43　　　　Ordinarily, a defendant must present an as-applied constitutional challenge to a statute at trial in order to develop the record as it pertains to the specific facts and circumstances of his claim.

*Thompson*, 2015 IL 118151, ¶ 37 (because "an as-applied constitutional challenge is dependent on the particular circumstances and facts of the individual defendant" it is "paramount that the record be sufficiently developed in terms of those facts and circumstances for purposes of appellate review").

¶ 44        Defendant concedes that he did not raise this issue in the trial court but urges review because "there are no additional facts to be found relevant to the Second Amendment inquiry." The State disagrees, arguing that "defendant's as-applied Second Amendment claim *** turns on whether he is non-violent felon and on whether his criminal conduct in the instant case was not dangerous – factual issues that were not litigated below."

¶ 45        We find that in the present case, the defendant's as-applied challenge is based on facts already in the record, *i.e.*, the defendant's possession of the firearm and his prior predicate felony convictions. See *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 57. The evidence at trial unequivocally showed that defendant's constructive possession of the firearm was the basis for his UUWF conviction, and it is undisputed that defendant's prior felony conviction for UUWF served as the predicate offense. Further, the PSI shows that defendant's remaining criminal history included a 2012 conviction for reckless discharge of a firearm and a 2013 conviction for identity theft. Accordingly, we fail to see which additional facts must be adduced at an evidentiary hearing that would preclude our review of the defendant's constitutional challenge.

¶ 46        That said, we find that neither *Bruen* nor the Supreme Court's previous second amendment jurisprudence supports the defendant's as-applied challenge to the UUWF statute. Since *Bruen*, numerous courts from various jurisdictions have considered similar prohibitions against felons possessing weapons and "the vast majority of cases have found that, as applied to nonviolent felons, statutes prohibiting felons from possessing weapons are constitutional under *Bruen*." *Brooks*, 2023 IL App (1st) 200435, ¶ 79 (collecting cases).

¶ 47     We recently addressed a defendant's similar claim that the UUWF statute was unconstitutional under the second amendment as applied to him based on *Bruen*. *People v. Baker*, 2023 IL App (1st) 220328, ¶¶ 33, 37. We rejected the defendant's claim because, we found, "*Bruen* just does not apply to him." *Id.* ¶ 37. We explained:

> "The *Bruen* Court could not have been more clear that its newly announced test applied only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant. *Bruen*, 597 U.S. ___, 142 S. Ct. at 2156 (the holding was limited to laws affecting 'law-abiding citizens'). Just in case a reader missed the first time that the court said it, the court repeated it 18 times. *Bruen*, 597 U.S. ___, 142 S. Ct. 2111 *passim* (the six justices in the majority repeated the phrase 'law-abiding' 18 times in their majority opinion and their concurrences). Further, Justice Kavanaugh in his concurrence quoted an earlier case that stated: ' "[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ***." ' *Bruen*, 597 U.S. ___, 142 S. Ct. at 2162 (Kavanaugh, J., concurring, joined by Robers, C.J.) (quoting [*District of Columbia v.*] *Heller*, 554 U.S. [570,] 626-27 [(2008)]). Justice Kavanaugh's concurrence was joined by Chief Justice Roberts, and they both joined the six-justice majority opinion. Based on the plain, clear, and repeated language of the justices in the majority, defendant is simply outside the box drawn by *Bruen*." *Baker*, 2023 IL App (1st) 220328, ¶ 37.

¶ 48     The same rationale applies to defendant's as-applied challenge in this case. Defendant is not a "law-abiding citizen" as emphasized by the Supreme Court in *Bruen.* Instead, defendant had been convicted of three felony offenses prior to the instant crimes, including reckless discharge of a firearm in 2012.

¶ 49    Defendant suggests we should not rely on the "law-abiding citizen" language in *Bruen* as indicative that the decision does not apply to felons. In support, defendant cites the Seventh Circuit's decision in *Kanter v. Barr*, 919 F.3d 437 (7th Cir. 2019), which was abrogated by the *Bruen* decision. There, the court simply declined to "read too much into" the Supreme Court's cautionary statement in *Heller* "that nothing in its decision 'should be taken to case doubt on the longstanding prohibitions on the possession of firearms by felons' which it referred to as 'presumptively lawful.' " *Id.* at 445 (quoting *Heller*, 554 U.S. at 626-27, 627 n.26). However, the Supreme Court's language in *Bruen* supports the validity of this cautionary statement.

¶ 50    Before this appeal was fully briefed, defendant filed numerous motions to cite additional cases as supplemental authority. We granted defendant's motion to cite *United States v. Daniels*, 77 F.4th 337 (5th Cir. 2023), and ordered defendant's motion to cite *Range v. Attorney General*, 69 F.4th 96 (3d Cir. 2023) (*en banc*), *United States v. Jackson*, 69 F.4th 495 (8th Cir.), *United States v. Bullock*, ___ F.Supp.3d ___, 2023 WL 4232309, and *People v. Thompson*, 2023 IL (1st) 220429-U, taken with the case. In his reply brief, defendant cited *Range*, *Jackson*, *Bullock*, and *Thompson* for support. Defendant's motion to cite *Range*, *Jackson*, *Bullock*, and *Thompson* as additional authority is therefore granted, but unavailing.

¶ 51                                C. Illinois Constitution

¶ 52    Defendant further argues that even if section 24-1.1 is constitutional under the second amendment, it violates article I, section 22 of the Illinois Constitution on its face and as it applies to him because it provides "greater protection" than the second amendment. That provision provides the following: "Subject only to the police power, the right of the individual citizen to keep and bear arms shall not be infringed." Ill. Const. 1970, art. I, § 2. Our supreme court has recognized that this section "does not mirror the second amendment to the Federal Constitution (U.S. Const., amend. II); rather it adds the words '[s]ubject only to the police power,' omits

prefatory language concerning the importance of a militia, and substitutes 'the individual citizen' for 'the people.' " *Kalodimos v. Village of Morton Grove*, 103 Ill. 2d 483, 491 (1984). Our supreme court explained that the police power is "a limitation on the liberty the provision affords." *Id.* Therefore, "the possession and use of arms is subject to an extraordinary degree of control under the police power" because "arms pose an extraordinary threat to the safety and good order of society." *Id.* at 491-92 (citing Report of the Bill of Rights Committee on the Preamble and Bill of Rights, 6 Record of Proceedings, Sixth Illinois Constitutional Convention (1970)).

¶ 53       More recently, we recognized that "[p]olice power includes the power to regulate certain aspects of gun possession." *People v. Robinson*, 2011 IL App (1st) 100078, ¶ 23 (citing *McDonald*, 561 U.S. 742 (2010)). As previously noted, the Supreme Court in *McDonald* reiterated its statement in *Heller* that its holding did not cast doubt on longstanding regulatory measures such as "prohibitions on the possession of firearms by felons." *McDonald*, 561 U.S. at 786. Accordingly, we find section 24-1.1 is a proper exercise of police power, and therefore defendant has not shown that the statute violates the Illinois Constitution on its face or as applied to him.

¶ 54                                CONCLUSION

¶ 55       For these reasons, we affirm the judgment of the circuit court of Cook County.

¶ 56       Affirmed.