2025 IL App (1st) 241101-U

No. 1-24-1101

Order filed September 30, 2025

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 8273 |
| | ) | |
| KORLEONE DARBY, | ) | Honorable |
| | ) | Michael R. Clancy, |
| Defendant-Appellant. | ) | Judge presiding. |

PRESIDING JUSTICE NAVARRO delivered the judgment of the court.
Justices Ocasio and Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's aggravated unlawful use of a weapon conviction is vacated for violating the one-act, one-crime doctrine; defendant's unlawful use of a weapon by a felon conviction is affirmed where the State properly proved constructive possession of a firearm beyond a reasonable doubt; and the unlawful use of a weapon by a felon statute is not facially unconstitutional.

¶ 2    Following a bench trial, defendant, Korleone Darby, was convicted of unlawful use of a weapon by a felon (UUWF) and aggravated unlawful use of a weapon (AUUW), and sentenced to three years in prison. On appeal, Darby contends that: (1) the State failed to prove he constructively

possessed the handgun found in the car he was driving; (2) the UUWF and AUUW statutes violate his individual right to bear arms; and (3) the AUUW conviction should be vacated because it violates the one-act, one-crime doctrine. For the following reasons, we vacate the AUUW conviction and affirm the judgment of the circuit court on the UUWF conviction.

¶ 3                                    I. BACKGROUND

¶ 4        Darby was arrested on July 15, 2023, following a routine traffic stop, and charged with one count of UUWF (720 ILCS 5/24-1.1(a) (West 2022)), where he "knowingly possessed on or about his person [] [a] handgun, after having previously been convicted of the felony offense of aggravated battery [with a] firearm" in Kane County, and one count of AUUW (720 ILCS 5/24-1.6(a)(1),(3)(A-5) (West 2022)), where he "knowingly carried in any vehicle, at a time when he was not on his land or in his abode, legal dwelling or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm, and the pistol, revolver or handgun possessed was uncased, loaded and immediately accessible, and he had not been issued a currently valid license under the firearm concealed carry act."

¶ 5        On March 26, 2024, a hearing was held on Darby's motion to quash arrest and suppress evidence. Chicago Police Officer Prozanski testified that on July 15, 2023, he and his partner, Officer Beam, were travelling westbound on Marquette Road, when he observed a car drive into oncoming traffic to pass another car. They pulled the car over and smelled the scent of fresh cannabis coming from the car. Officer Prozanski approached the car and saw Darby's "upper body going towards the floorboard of the vehicle" through the rear windshield. Darby was the driver of the vehicle. Officer Beam spoke with Darby and took his driver's license back to the squad car to run his information.

¶ 6    Before running Darby's information, Officer Beam reapproached the vehicle and asked Darby to step out of the vehicle "due to furtive movements [he] was making." Darby refused to get out of the car and "grabbed his door handle, pulled it closed," and did not follow the officer's directions to "keep his hands out of the vehicle."

¶ 7    Backup officers arrived, at which point Darby exited the vehicle and he was placed in handcuffs. Officer Prozanski recovered a Smith and Wesson .40-caliber firearm loaded with a round in the chamber from the driver's side door panel. Three bags containing suspect cannabis were recovered from the passenger side of the car. The passenger told officers that the cannabis belonged to her.

¶ 8    Officer Beam testified that he was the one who approached Darby on the driver's side of the vehicle after the traffic stop. As he approached, Darby made a "quick bending motion at the waist to his left side, and then he quickly returned to an upright position." Officer Beam observed this through the back windshield. Darby's hands were visibly shaking when he handed Officer Beam his driver's license and insurance information, so Officer Beam decided he should step out of the vehicle for the officer's safety. He thought Darby might be concealing a weapon. Officer Beam also noticed a strong odor of cannabis as he approached the car.

¶ 9    Officer Beam testified that Darby did not comply when he was asked to step out of the vehicle. Officer Beam attempted to open the door, but Darby pulled it shut again. Backup officers arrived, at which point one of those officers was able to convince Darby to exit the car.

¶ 10    At the end of the hearing, the trial court stated that "neither side is contesting the stop," and it found the stop to be proper. It then noted that the approaching officer hesitated before approaching the vehicle and made the driver roll both windows down, showing he had some safety concerns. Then, instead of running Darby's driver's license, the officer came back to ask Darby to

get out of the car, which also showed that he had safety concerns. The court found the officer's testimony to be credible and that the officer's observations justified him ordering Darby out of the vehicle. The delays in writing the traffic ticket were caused by Darby's refusal to exit the vehicle, and so the motion to quash arrest and suppress evidence was denied.

¶ 11    Darby then waived his right to a jury trial, and the case proceeded to a bench trial.

¶ 12    The attorneys waived opening statements. The parties then agreed to stipulate as to the testimony that was heard at the hearing on the motion to quash arrest and suppress evidence. The parties also stipulated as to Darby's prior qualifying offense, which was a conviction for aggravated battery with a firearm in Kane County. They also stipulated that Officer Prozanski recovered the Smith and Wesson .40-caliber loaded firearm and had it inventoried at the Chicago Police Department vault. The parties further stipulated that if Rodgeric Germino was called to testify, he would state that he was an evidence technician employed with the Chicago Police Department Crime Laboratory, and that he received the Smith and Wesson firearm, as well as a 14-round magazine, and 13 live cartridges were removed from the magazine.

¶ 13    Defense counsel then delivered closing argument, stating that this was a constructive possession case since there was no testimony that anyone saw Darby in actual possession of the firearm. It was recovered within the vehicle, and being the person closest to the firearm is not enough to prove he knew the firearm was there. The State argued that Darby's behavior, coupled with the fact that the firearm was right next to him in the driver's side door, showed that he had knowledge that it was there.

¶ 14    The trial court noted that the only issue in controversy was whether the State proved beyond a reasonable doubt that Darby knowingly possessed on or about his person any firearm. The court acknowledged that there was no fingerprint evidence or DNA evidence, and the car was not

registered to Darby. However, the trial court noted that Darby was in the driver's seat, the weapon was immediately to the left of his person, he made movements before the officers approached, and there was hesitancy on the part of the officers which showed their safety concerns. The court noted this was not a case where the gun was in a glove box; rather it was in plain view when the door was opened, and where the officers had observed Darby moving. The court found that Darby's unwillingness to get out of the car and open his door showed "consciousness of guilt" that the gun was within his arm's length. The court found that "the State proved beyond a reasonable doubt that [Darby] knowingly possessed on or about his person a firearm [and] that he knowingly carried in the vehicle a firearm." Darby was found guilty of UUWF and AUUW and sentenced to three years in prison for each count, to be served concurrently.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, Darby contends that: (1) the State failed to prove he constructively possessed the handgun found in the car he was driving; (2) the UUWF and AUUW statutes violate his individual right to bear arms; and (3) the AUUW conviction should be vacated because it violates the one-act, one-crime doctrine. Because his AUUW claims could become moot if we vacate that conviction, we address the one-act, one-crime issue first. See *People v. Bass*, 2021 IL 125434, ¶ 30 (it is well established "that cases should be decided on nonconstitutional grounds whenever possible, reaching constitutional issues only as a last resort."); *People v. Smith*, 2019 IL 123901, ¶ 14 ("the one-act, one-crime rule is not of constitutional dimension").

¶ 17                         A. One-Act, One-Crime Doctrine

¶ 18    The trial court found Darby guilty of both UUWF and AUUW, based on his possession of a singular firearm. He argues, and the State concedes, that his conviction for AUUW must be vacated. Under the one-act, one-crime doctrine "a criminal defendant may not be convicted of

multiple offenses when those offenses are all based on precisely the same physical act." *People v. Coats*, 2018 IL 121926, ¶ 11. When a defendant is convicted of multiple offenses based on possession of the same firearm, as is the case here, only one conviction may stand. *People v. Grant*, 2017 IL App (1st) 142956, ¶ 33. In such a situation, we must vacate the less serious offense. *People v. Artis*, 232 Ill. 2d 156, 170 (2009).

¶ 19 Here, the offense of AUUW is the less serious offense because Darby's sentencing range for AUUW was shorter than his sentencing range for the offense of UUWF. See 720 ILCS 5/24-1.1(e) (West 2022) (the sentence for a person on parole in violation of the UUWF statute shall be "not less than 3 years and not more than 14 years"); 720 ILCS 5/24-1.6(d)(3) (West 2022) (the sentence for a felon in violation of the AUUW statute shall be "not less than 3 years and not more than 7 years"). Accordingly, we vacate Darby's less serious conviction of AUUW and direct the circuit court to correct Darby's mittimus by vacating that conviction.

¶ 20 Having vacated Darby's conviction for AUUW, the only remaining conviction is for UUWF. And so, although Darby makes both a sufficiency of the evidence, and a constitutional, challenge, to the AAUW statute, we need not address those arguments in this order. *People v. Lopez*, 2025 IL App (1st) 232120, ¶ 17.

¶ 21                                    B. Constructive Possession

¶ 22 Darby contends that the State failed to prove beyond a reasonable doubt that he constructively possessed the recovered firearm. The UUWF statute provides: "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any *** firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2022). Darby does not challenge the fact that he has an underlying qualifying felony offense.

¶ 23    When a defendant challenges the sufficiency of the evidence, a reviewing court must determine whether, taking the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *People v. Eubanks*, 2019 IL 123525, ¶ 95. It is the responsibility of the trier of fact to weigh, resolve conflicts in, and draw reasonable inferences from the testimony and other evidence. *People v. Harris*, 2018 IL 121932, ¶ 26. We will not retry a defendant. *Eubanks*, 2019 IL 123525, ¶ 95. A conviction will be reversed only if the evidence is so unreasonable, improbable, or unsatisfactory that a reasonable doubt of the defendant's guilt remains. *Harris*, 2018 IL 121932, ¶ 26.

¶ 24    Possession of a firearm may be either actual or constructive. *People v. Jones*, 2023 IL 127810, ¶ 30. Where, as here, the firearm was not found on the defendant's person, the State must prove constructive possession. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). To establish constructive possession, the State must show that defendant (1) had knowledge of the presence of the firearm and (2) exercised immediate and exclusive control over the area where the firearm was found. *Id*. Knowledge may be shown by evidence of a defendant's acts, declarations, or conduct from which one can infer that he knew the contraband existed in the place where it was found. *People v. Beverly*, 278 Ill. App. 3d 794, 798 (1996). Knowledge can be inferred from several factors, including (1) the visibility of the weapon from defendant's location in the vehicle, (2) the amount of time in which defendant had an opportunity to observe the weapon, (3) gestures or movements made by defendant that would suggest an effort to retrieve or conceal the weapon, and (4) the size of the weapon. *People v. Ingram*, 389 Ill. App. 3d 897, 900 (2009). Control is established when a defendant has the "intent and capability to maintain control and dominion" over it. *People v. Frieberg*, 147 Ill. 2d 326, 361 (1992). A defendant's control over the location

where weapons are found gives rise to an inference that the defendant possessed the weapons. *McCarter*, 339 Ill. App. 3d at 879.

¶ 25   Here, Darby contends that the State failed to prove that he knew the gun was in the car or that he had control over the gun. We disagree. The evidence showed that as the officers approached the car, they saw Darby bend at the waist and make a furtive movement to his left side where the gun was located. When the officers asked Darby to get out of the car, he pulled the door shut and would not comply with the officers' orders to keep his hands outside of the car. Officer Prozanski had to hold Darby's hands outside the car until backup officers arrived. When Darby finally got out of the car, a firearm was clearly visible in the driver's side door. Looking at the videos and the still shots of inside of the car, which were admitted into evidence at the suppression hearing, Darby would have been able to see the firearm from his position in the car. Darby's furtive movements, combined with the visibility of the firearm, and his refusal to exit the vehicle by physically holding the car door closed, shows that Darby had knowledge of the firearm.

¶ 26   This evidence also shows that Darby had control over the firearm. Proof that a defendant had control over the location where the firearm was found gives rise to an inference of his knowledge and possession of that weapon. *Jones*, 2023 IL 127810, ¶ 30. The defendant's proximity to the firearm is another fact to consider. *People v. Wise*, 2021 IL 125392, ¶ 29. The fact that other people may have also had access to the firearm does not diminish a defendant's control. *People v. Givens*, 237 Ill. 2d 311, 338 (2010). When viewed in a light most favorable to the State, we find that the evidence of Darby's proximity to the weapon, his movements before the weapon was recovered, and his control over the vehicle in which the weapon was found, are sufficient to show that Darby had control over the firearm.

¶ 27    This case is similar to *People v. Robinson*, 2023 IL App (1st) 220959-U, where the defendant, who was driving the car, got into a crash and then fled on foot. The officer who arrived at the scene saw a gun "visibly protruding from between the driver's seat and center console," and recovered the weapon. *Id*. ¶ 10. The court found that even though "there was no physical evidence, such as fingerprints, linking defendant to the firearm," the evidence was sufficient to find that the defendant had knowledge and control of the firearm where he was observed in the driver's seat, the gun was "visibly protruding from between the driver's seat and center console," the gun was in easy reach of the defendant, the defendant was in control of the vehicle, and the defendant fled from the scene. *Id*. Similarly here, Darby was driving the vehicle, he made furtive movements in the direction of the gun while being approached by officers, he refused to get out of the car and held his door shut, the gun was visibly protruding from the driver's side door, and the gun was within easy reach of Darby.

¶ 28    We find Darby's reliance on *People v. Bailey*, 333 Ill. App. 3d 888, 891 (2002), to be unpersuasive. In *Bailey*, the defendant was convicted of AUUW, following a traffic stop and the appellate court ultimately reversed the conviction, finding that there was not enough evidence of knowledge to establish constructive possession. *Id*. The police found a handgun under the front passenger seat of the car, where the defendant had been sitting. *Id*. at 892. However, the vehicle was not the defendant's vehicle, the gun was registered to someone else and had not been reported stolen, the handgun was not visible from where the defendant was sitting, and no officers gave any testimony that indicated the defendant was trying to retrieve or hide the weapon. *Id*. One officer specifically testified that he saw no movement at all from either occupant of the vehicle, and the other officer only saw slight movement from the driver as he drove. *Id*. As can be seen, *Bailey* is wholly inapposite to the case at bar, where Darby was the driver of the vehicle, the gun was visible

and in close proximity to Darby, he was observed making furtive movements before the officers approached the car, and he would not cooperate by getting out of the vehicle or letting the officers open the driver's side door. Accordingly, we find that a rational trier of fact could have found that Darby had constructive possession of the gun beyond a reasonable doubt and there was sufficient evidence to convict him of UUWF.

¶ 29                                C. Right to Bear Arms

¶ 30    Lastly, Darby contends that the UUWF statute violates his right to bear arms under the second amendment of the United States Constitution (U.S. Const., amend. II) and, thus is unconstitutional on its face.

¶ 31    The second amendment of the Constitution provides: "A well regulated Milita, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. The second amendment applies to the states through the fourteenth amendment (U.S. Const., amend. XIV). *People v. Chairez*, 2018 IL 121417, ¶ 23. In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022), the United States Supreme Court observed that, since *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), federal appellate courts have utilized "a 'two-step' framework for analyzing Second Amendment challenges that combines history with means-end scrutiny." Instead of taking that approach, the Court enunciated a different approach, asserting that, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. And thus, to regulate such conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. Based on this approach, the Court found a New York law

requiring citizens to demonstrate a special need for self-protection to obtain an unrestricted license to carry a concealed firearm in public to be unconstitutional. *Id*. at 38-39.

¶ 32    In its opinion, the Supreme Court made clear that its test only applied to laws attempting to regulate possession of firearms by "law-abiding citizens." See *id*. at 29, 38, 60. Justice Alito, in a concurrence, stated: "All that we decide in this case is that the Second Amendment protects the right of law-abiding people to carry a gun outside the home for self-defense ***." *Id*. at 76 (Alito, J., concurring). Similarly, Justice Kavanaugh, in a concurrence, noted that the New York law "den[ied] the right to carry handguns for self-defense to many ordinary, law-abiding citizens." (Internal quotation marks omitted.) *Id*. at 79. Justice Kavanaugh also posited that, under the proper interpretation of the second amendment, various firearm regulations are constitutional and then quoted from *Heller* that: " '[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ***.' " *Id*. at 81 (quoting *Heller*, 554 U.S. at 626). More recently, in *United States v. Rahimi*, 602 U.S. 680 (2024), in discussing *Heller*, the Court asserted that its prior decision "stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' " *Id*. at 699 (quoting *Heller*, 554 U.S. at 626).

¶ 33    Having provided an overview of the *Bruen* decision, we address Darby's facial challenge to the constitutionality of the UUWF statute. A party challenging the constitutionality of a statute "carr[ies] the heavy burden of successfully rebutting the strong presumption that statutes are constitutional." (Internal quotation marks omitted.) *People v. Rizzo*, 2016 IL 118599, ¶ 23. "[A] facial challenge requires a showing that the statute is unconstitutional under any set of facts, *i.e.*, the specific facts related to the challenging party are irrelevant." *People v. Thompson*, 2015 IL 118151, ¶ 36. If there exists a situation in which the statute could be validly applied, a facial

challenge must fail. *Rizzo*, 2016 IL 118599, ¶ 24. Whether a statute is constitutional is a question of law we review *de novo*. *People v. Villareal*, 2023 IL 127318, ¶ 14.

¶ 34 At the time Darby committed the offense of UUWF, the statute provided that: "It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any *** firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2022). As the statute states, a prerequisite for being convicted of UUWF is having previously been convicted of a felony. *Id*.

¶ 35 Because the United States Supreme Court's decision in *Bruen* was rooted in second amendment protections to law-abiding citizens, this court has concluded that statutes "prohibit[ing] felons from possessing firearms *** generally fall outside of [the second amendment's] scope." *People v. Gray*, 2025 IL App (1st) 191086-B, ¶ 20*; People v. Baker*, 2023 IL App (1st) 220328, ¶ 37 ("The *Bruen* Court could not have been more clear that its newly announced test applies only to laws that attempted to regulate the gun possession of 'law-abiding citizens,' and not felons like defendant."). In turn, this court has considered whether the UUWF statute is facially unconstitutional in numerous cases and consistently found that the statute is facially constitutional because felons are not part of "the people" protected by the second amendment (U.S. Const., amend II), resulting in the *Bruen* test not applying. *People v. Cox*, 2025 IL App (1st) 241250, ¶ 23; *People v. Lopez*, 2025 IL App (1st) 232120, ¶ 32; *People v. Boss*, 2025 IL App (1st) 221855, ¶ 33 ("we *** agree that the second amendment does not apply to a felon's firearm possession."); *People v. Bryan*, 2025 IL App (1st) 232497-U, ¶ 14 (UUWF statute not facially unconstitutional "because the Second Amendment does not apply to convicted felons."); *Baker*, 2023 IL App (1st) 220328, ¶ 37. We see no reason to depart from these well-reasoned

holdings and similarly conclude that, because the second amendment only protects the right of law-abiding citizens to bear arms, the *Bruen* test does not apply to the UUWF statute.

¶ 36 And, even if the Bruen test did apply, such a prohibition is consistent with the United States' historical tradition of firearm regulation and, therefore, still facially constitutional. See *Lopez*, 2025 IL App (1st) 232120, ¶¶ 23, 32. Consequently, the UUWF statute is constitutional on its face.

¶ 37                                    III. CONCLUSION

¶ 38 For the foregoing reasons, we vacate Darby's conviction for AUUW but affirm the judgment of the circuit court of Cook County on Darby's conviction for UUWF.

¶ 39 Affirmed in part; vacated in part.